## ROYAL–MILBANK INSURANCE COMPANY, Respondent,

v.

## Gary BUSSE, Trustee for the Heirs of Mary Jean Busse, Appellant.

### No. C2–91–366.

Court of Appeals of Minnesota.

Sept. 3, 1991.

Richard S. Scherer, Castor, Klukas, Scherer & Logren, Minneapolis, for respondent.

Jerome E. Kline, Borkon, Ramstead & Mariani, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and HUSPENI and THOREEN,* JJ.

### OPINION

JOHN F. THOREEN, Judge.

After settling his wrongful death claim with the insurers of the other vehicle in a wrongful death action, appellant Gary Busse sought underinsured motorist benefits and demanded arbitration of his underinsured claim. Respondent Royal–Milbank Insurance Company (Milbank) commenced the present declaratory judgment action, and moved for summary judgment, seeking a determination that it was not obligated to provide underinsured motorist benefits and seeking a stay of the arbitration. The trial court found that there was no underinsured motor vehicle and granted Milbank's motion. Busse appealed.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

The parties have agreed on a statement as to the record pursuant to Minn.R.Civ. App.P. 110.04. Mary Jean Busse was killed in an automobile accident on August 22, 1989. The driver of the other vehicle, Anthony Brunes, was a permissive user of a vehicle (the Schultes vehicle) owned by John Schultes and Schultes' Plumbing, Inc. At the time of the accident, there was $2,500,000 of liability insurance on the Schultes vehicle. Northern Insurance Company of New York (Northern) insured Schultes' Plumbing. Northern issued a primary liability policy with limits of $500,000 per accident. In addition, Northern provided an umbrella liability policy to Schultes' Plumbing with liability limits of $2,000,000. Brunes carried a personal automobile liability insurance policy through Metropolitan Insurance Company, with liability limits of $50,000 per accident.

Gary Busse commenced a wrongful death action against Brunes, Schultes and Schultes' Plumbing. A settlement of $544,333.10 was negotiated. Prior to completing the settlement with the tortfeasors, Busse gave notice of his intent to settle the wrongful death action to his own insurer, Milbank, as required by *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). Milbank had issued the Busses an automobile insurance policy which included underinsured motorist benefits of $75,000. Milbank refused to substitute its draft for the settlement offer. Busse proceeded to settle the wrongful death action. It is agreed that Busse's damages did not exceed $2,550,000.

## ISSUE

Did the trial court err in determining Busse was not entitled to recover underinsured motorist benefits from Milbank?

## ANALYSIS

### 1. STANDARD OF REVIEW

█ The standard of review of a summary judgment is well established. Summary judgment is appropriate when there is no genuine issue as to any material fact and either party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In the present case, the trial court's grant of summary judgment was based on its application of the No–Fault Act to undisputed facts. Statutory construction is a question of law which this court reviews de novo. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

### 2. UNDERINSURED MOTORIST BENEFITS

Underinsured motorist (UIM) coverage must be provided in every automobile insurance policy issued in Minnesota. Minn. Stat. § 65B.49, subd. 3a(2) (1990). The No–Fault Act defines "underinsured motorist coverage" as:

> Coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of *underinsured motor vehicles.*

Minn.Stat. § 65B.43, subd. 19 (1990) (emphasis added). The term "underinsured motor vehicle" is defined as:

> A motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its *limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages.*

*Id.*, subd. 17 (emphasis added).

█ Before UIM benefits are payable, there must be an underinsured motor vehicle. *See Broton v. Western Nat'l Mut. Ins. Co.*, 428 N.W.2d 85, 89 (Minn.1988); *Jacobson v. Illinois Farmers Ins. Co.*, 264 N.W.2d 804, 805 n. 1 (Minn.1978); *Sutherland v. Allstate Ins. Co.*, 464 N.W.2d 150, 152 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 15, 1991); *Kothrade v. American Family Mut. Ins. Co.*, 462 N.W.2d 413, 415 (Minn.App.1990); *Onasch v. Auto-Owners Ins. Co.*, 444 N.W.2d 587, 589 n. 2

(Minn.App.1989), *pet. for rev. denied* (Minn. Oct. 25, 1989); *Brosdahl v. Minnesota Mut. Fire & Casualty Co.*, 437 N.W.2d 695, 697 n. 2 (Minn.App.1989). Since the first underinsured motorist statute was enacted in Minnesota, whether a vehicle is underinsured has consistently been determined by comparing the claimant's damages with the available limits of liability insurance coverage. *See* Minn. Stat. § 65B.43, subd. 17 (Supp.1985); Minn. Stat. § 65B.49, subd. 6(e) (1974); Minn.Stat. § 65B.26(d) (1971).

Busse contends he should be entitled to settle for less than the liability limits and recover the "gap" from Milbank. We disagree. The Minnesota Supreme Court has noted that the 1985 amendments to the No-Fault Act effectively closed the gap discussed in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). *See Broton*, 428 N.W.2d at 89–90. First, however, the other vehicle must be underinsured:

> [A] motor vehicle is underinsured only if the limit of the applicable bodily injury liability policy is less than the amount needed to compensate the injured party. * * *.

*Id.* at 90.

█ In the present case, the liability limits on the Schultes vehicle were $2,550,000. Busse agrees his damages do not exceed $2,550,000. Accordingly, the Schultes vehicle was not underinsured, and Busse is not entitled to recover underinsured motorist benefits.

### DECISION

The vehicle driven by Brunes was not underinsured as that term is defined by the No-Fault Act. Therefore, Busse cannot make a claim for underinsured motorist benefits.

Affirmed.