**Scott Raymond GUSK, Respondent,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.**

No. C4–95–2421.

Supreme Court of Minnesota.

March 6, 1997.

Stringer & Rohleder, Ltd., A. James Dickinson, Owen L. Sorenson, Suzanne Wolbeck Kvas, St. Paul, for appellant.

Douglas G. Sauter & Associates, P.A., Douglas G. Sauter, Coon Rapids, for respondent.

## OPINION

KEITH, Chief Justice.

This case involves the legal effect of a *Schmidt v. Clothier* substitution on an insurer's liability for uninsured motorist coverage. Plaintiff-respondent Scott Raymond Gusk was involved in an automobile accident with an insured vehicle and an uninsured vehicle. Gusk reached a tentative settlement with the insured driver, and appellant Farm Bureau Mutual Insurance Company (Farm Bureau) substituted its draft under *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983), to preserve its potential subrogation rights as an underinsurer. After trial, the jury awarded Gusk less in net damages for the liability of both defendants than Farm Bureau had paid Gusk in substitution. The lower courts rejected Farm Bureau's argument that Gusk received an impermissible double recovery. *Gusk v. Spencer*, No. C4-95-2421, 1996 WL 344986, at *1-*2 (Minn.App. June 25, 1996) (unpublished opinion). We affirm.

### I.

Gusk was injured on August 14, 1989 after an unidentified motorist nearly collided with him and he lost control of his bicycle; Gusk was then hit by a second automobile driven by Darel Spencer. At the time, Gusk had $50,000 of underinsured and $50,000 of uninsured motorist coverage with Farm Bureau. Gusk's policy included unidentified vehicles within its uninsured motorist coverage, and Gusk subsequently filed suit alleging negligence on the part of both motorists.[1]

Before trial, Gusk reached a tentative settlement with Spencer's insurer for $80,000 of Spencer's $100,000 policy limit. On May 18,

1994, Gusk notified Farm Bureau of the proposed settlement pursuant to *Schmidt*, 338 N.W.2d at 263. Farm Bureau then exercised its right under *Schmidt* to substitute its own draft for $80,000 within 30 days, thereby preserving its potential right of subrogation against Spencer.

After trial, the jury found $122,190.10 in total damages and apportioned fault 50% to the uninsured motorist, 30% to Spencer, and 20% to Gusk. After addition of pre-judgment interest and subtraction of Gusk's share of liability and no-fault benefits, $78,462.74 in damages remained to be divided between Farm Bureau and Spencer. This left Farm Bureau liable to Gusk for $48,646.89 in uninsured motorist benefits (*i.e.*, the unidentified motorist's share of liability), and Spencer's insurer liable to Farm Bureau as subrogee for $29,815.85 (*i.e.*, Spencer's share of liability).

The district court denied Farm Bureau's motion for judgment notwithstanding the verdict or for a new trial and entered judgment against Farm Bureau for $48,646.89, plus $11,937.21 in costs and disbursements. The court rejected Farm Bureau's argument that the $80,000 Farm Bureau paid to Gusk in substitution should offset Farm Bureau's contractual liability for the negligence of the unidentified motorist. Instead, the court agreed with Gusk that Farm Bureau's payment for protection of its subrogation rights should have the same legal effect as if Gusk had actually settled with Spencer and Spencer had received a release from liability. The court concluded that Farm Bureau's $80,000 substitution only preserved subrogation rights against Spencer as a potentially *underinsured* motorist; the payment had no effect on Farm Bureau's contractual duty to compensate Gusk for injuries attributable to the *uninsured* motorist.

1. Farm Bureau was added as a defendant in Gusk's amended complaint—apparently without objection—after it was discovered that the unidentified motorist may have been partially at fault for Gusk's injuries. Farm Bureau has not raised the argument that a direct suit against it on a negligence theory is improper. *See Mech v. General Cas. Co. of Wisconsin*, 410 N.W.2d 317, 320 (Minn.1987) (contrasting Minnesota law with Wisconsin law, which authorizes direct actions by statute); *Miller v. Market Men's Mut. Ins.*

Co., 262 Minn. 509, 511–12, 115 N.W.2d 266, 268 (1962) (citing *Gjovik v. Bemidji Local Bus Line*, 223 Minn. 522, 27 N.W.2d 273 (1947)); *see also Drake v. Ryan*, 514 N.W.2d 785, 787–88 (Minn.1994) ("Because insurance contracts in Minnesota are contracts of indemnity, the plaintiff must obtain a judgment against the insured on the issue of liability in order to reach the excess liability insurer and the insurance proceeds."); *Rinn v. Transit Cas. Co.*, 322 N.W.2d 357, 358 (Minn.1982).

Farm Bureau appealed, but the court of appeals affirmed. The court of appeals agreed with the district court that Farm Bureau's obligations for underinsured and uninsured motorist benefits were separate. Thus, Gusk did not receive an impermissible "double recovery," even though the substitute draft payment from Farm Bureau acting as an underinsurer turned out to be more than the total damages owed by both motorists. "Farm Bureau simply misjudged the amount it needed to pay to preserve its subrogation rights." *Gusk,* No. C4–95–2421, 1996 WL 344986, at *2.

Farm Bureau petitioned for further review, which we granted on September 20, 1996.

## II.

In *Schmidt,* 338 N.W.2d at 262–63, this court sought to protect an underinsurer's potential subrogation rights by requiring notice of a tentative settlement agreement from an insured who might wish to seek underinsurance benefits. The court held that after adequate notice of the proposed settlement, the underinsurer may either substitute a payment to the insured equal to the tentative settlement amount, or pay out underinsurance benefits owed the insured. *Id.* at 263. Either payment protects the underinsurer's right of subrogation before the tortfeasor is released from liability. *American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 925 (Minn.1990); *Schmidt,* 338 N.W.2d at 262–63; *see also Hermeling v. Minnesota Fire & Cas. Co.,* 548 N.W.2d 270, 273–75 (Minn.1996). If the underinsurer believes that enforcement of its subrogation right is unlikely, the underinsurer may do nothing and allow the settlement agreement to become final. In that case, the tortfeasor presumably acquires a release and the possibility of subrogation is eliminated. *Baumann,* 459 N.W.2d at 925.

Here, Gusk decided to notify Farm Bureau of his tentative settlement agreement with Spencer, which protected Gusk's right to pursue underinsurance benefits from Farm Bureau. *See Richards v. Milwaukee Ins. Co.,* 518 N.W.2d 26, 27 n. 1 (Minn.1994); *Schmidt,* 338 N.W.2d at 262; *see also Broton v. Western Nat'l Mut. Ins. Co.,* 428 N.W.2d 85, 90 (Minn.1988) (stating that a claimant who settles and releases an underinsured tortfeasor without notice does so "at his or her peril"). Farm Bureau then chose to substitute its $80,000 for Spencer's, which protected its potential right of subrogation as an underinsurer and forced the matter to trial. By substituting, Farm Bureau stood to recover: (1) the $20,000 "gap" between the $80,000 settlement price and Spencer's $100,000 policy limits, if the verdict was more than $80,000 for Spencer's negligence; and (2) personal assets from Spencer, if the verdict was more than $100,000 for Spencer's negligence. *See Employers Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 856–58 (Minn.1993) (explaining that the *plaintiff* recovers the "gap" if the underinsurer allows a settlement and a release for the tortfeasor); *Broton,* 428 N.W.2d at 89–90.[2]

But in this case, the verdict was less than $80,000 for Spencer's negligence. In fact, the verdict after deductions amounted to only $78,462.74 in damages for the negligence of *both* Spencer and the uninsured motorist. The issue, then, is whether Farm Bureau's *Schmidt v. Clothier* substitution, which protected its subrogation rights as an *underinsurer,* limits Farm Bureau's contractual obligation to compensate Gusk for damages attributable to an *uninsured* motorist. If Farm Bureau's obligation is not limited by *Schmidt,* then Gusk is entitled to $48,646.89 in uninsured motorist benefits.

Gusk's principal arguments are that Farm Bureau assumed the downside risk of a jury verdict of less than $80,000 when it substituted under *Schmidt* and that the uninsured motorist coverage that he purchased from Farm Bureau is separate from and should not be offset by benefits received pursuant to his underinsured motorist coverage. Gusk contends that a *Schmidt v. Clothier* substitution is equivalent to a "settlement" that would preclude offsets for "non-settling" co-

2. Of course, if the jury had awarded Gusk more than $100,000 for Spencer's negligence, then Farm Bureau would have been liable to Gusk as his underinsurer for that excess, up to his $50,000 policy limit. *See* Minn.Stat. § 65B.49, subd. 4a (1996); *Nordstrom,* 495 N.W.2d at 858–59.

tortfeasors after a verdict. Farm Bureau's primary response is that a *Schmidt v. Clothier* substitution, by definition, prevents a settlement and that this state's clear policy against overcompensation justifies creating an offset for such substitutions against uninsured motorist benefits when a subsequent jury verdict confirms that the substitution provided adequate compensation. A substitution, in Farm Bureau's opinion, merely requires a case to proceed to trial to determine fault and shares of liability. *Cf. Richards,* 518 N.W.2d at 28 (stating that a jury verdict conclusively establishes the tort damages that an insurance claimant has suffered).

■ As an initial matter, it should be clear that a subsequent jury verdict less than the amount of a *Schmidt v. Clothier* substitution cannot justify a "refund" of that substitution. A substitution is a payment to the plaintiff for the protection of the insurer's potential right of subrogation; its creation was not intended to deprive insureds of the benefit of their tentative settlement bargain. The logical extension of Farm Bureau's argument implies otherwise, but Farm Bureau has conceded on brief and at oral argument that a substitution provides a "floor" for compensation to the insured.

■ We also agree with Farm Bureau that *Schmidt v. Clothier* substitutions, by their very nature, prevent settlements between insureds and tortfeasors. Hence, Gusk's citation to case law from this and other jurisdictions regarding settlements fails to provide controlling precedent in this case. *See State Farm Mut. Auto. Ins. Co. v. Galloway,* 373 N.W.2d 301, 305 (Minn.1985); *Shantz v. Richview, Inc.,* 311 N.W.2d 155, 156 (Minn. 1980); *Smith v. Zufelt,* 880 P.2d 1178, 1181, 1186 (Colo.1994); *Haderlie v. Sondgeroth,* 866 P.2d 703, 711 (Wyo.1993). It is true that a *Pierringer* release relieves a settling defendant in a multiple tortfeasor situation from incurring additional liability, *Frey v. Snel-*

*grove,* 269 N.W.2d 918, 921–23 (Minn.1978) (citing *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963)); the remaining defendants in such cases are not entitled to any credit or offset based on the settlement proceeds received by the plaintiff, *Rambaum v. Swisher,* 435 N.W.2d 19, 22–23 (Minn.1989) (relying on the intent of the parties, the concern that tortfeasors should pay their fair share, and the law's policy of encouraging settlements); and, in general, nonsettling tortfeasors are not allowed to object to the amount a settling tortfeasor pays for a release, *Galloway,* 373 N.W.2d at 305. But these principles do not control this case.

At the same time, we disagree with Farm Bureau's contention that the absence of a settlement between Gusk and Spencer disposes of the issue before us. Rather, Gusk properly emphasizes that underinsured and uninsured motorist coverage obligations are presumed separate. *See* Minn.Stat. § 65B.49, subd. 3a. In multiple tortfeasor cases such as this, the insured's right to receive benefits under the two policies must be considered one policy at a time. In short, Farm Bureau's substitute payment protected a right of subrogation against Spencer as an *underinsured* motorist; it should have no effect on Farm Bureau's contractual obligation to compensate Gusk for damages attributable to the *uninsured* motorist.

Gusk certainly could have pursued his uninsured motorist claim against Farm Bureau if Gusk had been allowed to settle with Spencer, or even if Gusk had never notified Farm Bureau of the tentative settlement. In the latter case, Gusk would not have been entitled to *underinsurance* benefits due to the failure to notify, but he would have received $80,000 in settlement benefits and a chance to recover additional sums attributable to the *uninsured* motorist's fault.[3] By the same token, Farm Bureau's substitution as an underinsurer should have no legal ef-

---

3. This is so because after a settlement and a *Pierringer* release, Farm Bureau clearly would not have been entitled to an offset against its uninsured motorist liability based on the value of an actual settlement with Spencer. *See Rambaum,* 435 N.W.2d at 22–23; *Galloway,* 373 N.W.2d at 305, 307. Thus, allowing an offset might discourage plaintiffs from notifying their

underinsurers of tentative settlements in multiple tortfeasor situations, which seems contrary to the purposes of the *Schmidt v. Clothier* substitution procedure: protecting underinsurers from losing potentially valuable subrogation rights by allowing them an opportunity to evaluate the case before insureds independently settle and release tortfeasors. *See Schmidt,* 338 N.W.2d at 263.

fect on Farm Bureau's contractual obligation to pay uninsured motorist benefits. Farm Bureau has not identified, and we cannot locate, any provision in this state's automobile insurance statute nor Gusk's insurance policy that authorizes offsetting uninsured motorist benefits with a *Schmidt v. Clothier* substitution.

This case involves a certain degree of tension between our policy of protecting underinsurer's potential subrogation rights through the *Schmidt v. Clothier* substitution procedure and our policy of allowing insureds to pursue and settle their claims against individual tortfeasors who are potentially underinsured: under certain interpretations of the law, the rights of the insurer might clash with the rights of the insured. With that concern in mind, we conclude that the result we have reached fairly accommodates both policies and is consistent with a prudent balancing of the relevant purposes of Minnesota's no-fault automobile insurance laws. Such purposes include relieving severe economic distress of uncompensated victims while avoiding "duplicate recovery," Minn. Stat. § 65B.42(1), (5); speeding the administration of justice and easing the burden of litigation on the courts, *id.* § 65B.42(4); and placing insurance claimants in the same position in which they would have been if the tortfeasor had adequate liability insurance. *See Dairyland Ins. Co. v. Starkey*, 535 N.W.2d 363, 364–65 (Minn.1995) (precluding an attempted *post*-verdict settlement by the plaintiff that was intended to expose his underinsurer to liability).

On balance, this case does not present grounds for an offset not contemplated by the parties or the law. Gusk's recovery, at first glance, may appear to be at odds with our clear policy against overcompensation. *Dean v. American Family Mut. Ins. Co.*, 535 N.W.2d 342, 344 (Minn.1995); *Richards*, 518 N.W.2d at 28. But Farm Bureau's proposed solution—denying Gusk benefits for *uninsured* motorist liability by eliminating Farm Bureau's separate contractual obligation for such benefits—is unpersuasive. Farm Bureau acted as an *underinsurer* when it chose to substitute its draft; that choice is no basis for *under* compensating Gusk for injuries attributable to uninsured motorists. The better course is to enforce Farm Bureau's contractual obligation, maintain the presumed independence of underinsured and uninsured motorist benefits, and promote closure after an underinsurer prevents settlement by substitution.

In the absence of authority in Gusk's automobile insurance policy, applicable state statutes, or our case law, we agree with the lower courts that Gusk's receipt of a *Schmidt v. Clothier* substitution from his underinsured motorist policy carrier does not preclude recovery of uninsured motorist benefits after a jury verdict.

Affirmed.