**Darla RICKE, Respondent,**

v.

**PROGRESSIVE SPECIALTY INSURANCE COMPANY, Appellant.**

No. C8–97–2071.

Court of Appeals of Minnesota.

May 5, 1998.

Review Denied June 17, 1998.

Steven J. Sheridan, Robert H. Magie, III, Magie, Andresen, Haag, Paciotti, Butterworth & McCarthy, P.A., Duluth, for appellant.

Darrold E. Persson, David A. Arndt, Matonich & Persson, Chartered, Hibbing, for respondent.

Considered and decided by CRIPPEN, P.J., and PETERSON and MANSUR, JJ.*

## OPINION

PETERSON, Judge.

On appeal from a summary judgment, an underinsured motorist (UIM) carrier argues that its insured was not entitled to settle her claims against all defendants and then claim UIM benefits based on a later stipulation to liability and damages because the settlement payment equaled her total damages. We affirm.

## FACTS

Respondent Darla Ricke was a passenger in a motor vehicle owned and operated by Shane Lokken when the vehicle collided with a motor vehicle owned by John Olson and driven by Eric Olson. Ricke sued Lokken, John Olson, and two establishments that had served liquor to Lokken on the night of the accident. Three other claimants asserted tort claims as a result of the accident.

The two dram shops deposited into court the sum of $400,000, and Lokken deposited $60,000, his liability policy limits. Because of claims by other victims, Ricke agreed to accept $113,000 from the $460,000 and to execute *Pierringer* releases in favor of Lokken and the two dram shops. Included in

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the $113,000 was $15,000 from Lokken's liability policy. Ricke also agreed to execute a separate *Pierringer* release in favor of John Olson, in return for $8,000. Thus, Ricke received a total of $121,000 in return for *Pierringer* releases in favor of all of the defendants. The *Pierringer* releases reserved Ricke's UIM claims.

At the time of the accident, Ricke was insured by appellant Progressive Specialty Insurance Company (Progressive), with UIM limits of $30,000. Before executing the release in favor of Lokken, Ricke sent Progressive a *Schmidt v. Clothier* notice, advising Progressive that she intended to release Lokken and to claim UIM benefits.[1] Progressive did not substitute its draft to preserve its subrogation rights.

After releasing all of the defendants, Ricke sued Progressive for UIM benefits, claiming that Lokken was an underinsured motorist because the amount of Ricke's damages exceeded Lokken's available liability coverage. Ricke and Progressive both moved for summary judgment. They stipulated that Ricke's total recoverable tort damages were $121,000 and that Lokken was 65% liable for Ricke's injuries. The district court granted summary judgment in favor of Ricke.

## ISSUES

1. Is Ricke entitled to UIM benefits despite the fact that she had released all defendants and the settlement payment equaled the full amount of her stipulated damages?

2. Is Ricke entitled to prejudgment interest from the time that Progressive stipulated to the amount of her damages?

## ANALYSIS

■ 1. Ricke's insurance policy with Progressive entitles her to receive damages for bodily injury that she is legally entitled to recover from the owner or operator of an underinsured motor vehicle. A motor vehicle is "underinsured" if it is covered by a liability policy at the time of the accident but the policy "limit for bodily injury liability is less

than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17 (1996). Whether a vehicle is underinsured is an issue of law, which this court may decide without deferring to the district court. *Lahr v. American Family Mut. Ins. Co.*, 551 N.W.2d 732, 733 (Minn. App.1996).

■ Ricke received only $15,000 from Lokken's policy limit of $60,000, although Lokken was liable for $78,650, 65% of Ricke's total damages of $121,000. Nevertheless, Progressive argues that Ricke is not entitled to UIM benefits as a result of Lokken's liability because she settled with all defendants, including Lokken, and the settlement equaled the full amount of her damages.

The supreme court addressed a similar argument in *Rambaum v. Swisher*, 435 N.W.2d 19 (Minn.1989). There, the plaintiff sued a driver and two dram shops and then executed a *Pierringer* release in favor of one of the dram shops for $200,000. *Id.* at 20. A jury awarded the plaintiff damages in the amount of $268,241.67 and apportioned only 10% of the fault to the settling dram shop. *Id.* The *Rambaum* court held that the $200,000 settlement amount should not be credited against the entire damages award, because the plaintiff's settlement with one defendant was irrelevant to the liability and damages that were later apportioned to the non-settling defendants. *Id.* at 22–23.

The *Rambaum* court explained that a defendant who settles under a *Pierringer* release settles for an agreed-upon share of the damages and is released from further liability. *Id.* at 22. In return, the plaintiff agrees to accept the risk that she will be required to indemnify the settling defendant against any cross-claims for contribution by nonsettling defendants. *Id.* The court concluded that deducting the *Pierringer* payment from the entire award would be contrary to the intent of the settling parties, who had agreed to deduct from the award only the portion of the payment that was attributed to the settling defendant's fault. *Id.* at 22–23.

---

1. *See Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983) (underinsurer entitled to notice before settlement with tortfeasor).

Progressive points out that, unlike the situation in *Rambaum,* Ricke settled with all of the defendants; there were no nonsettling defendants. Progressive argues that this procedure constituted a misuse of the *Pierringer* releases because there was no longer any possibility that Ricke would have to indemnify a nonsettling defendant in return for the release.

■ The critical issue, however, is that Ricke settled without a prior apportionment of fault and damages. When a plaintiff is aware that a defendant has liability insurance sufficient to cover the damages for which the defendant is liable, a settlement for less than the defendant's liability limits, in order to obtain additional UIM benefits, is a sham. *Cf. Dairyland Ins. Co. v. Starkey,* 535 N.W.2d 363, 364–65 (Minn.1995) (disallowing postverdict settlement that was intended to expose uninsured motorist carrier to liability). Here, however, Progressive admits that when Ricke settled with all of the defendants, Lokken's liability had not yet been determined, and Ricke did not know that a later apportionment of damages would render him "underinsured" as a matter of law. There is no indication that Ricke settled with Lokken for $15,000 in order to obtain UIM benefits from Progressive.

It is undisputed that Lokken's liability limits were insufficient to compensate Ricke for the stipulated amount of damages attributed to his fault. Because, as a matter of law, Lokken was underinsured, Progressive is liable, up to its policy limits, for the difference between the settlement amount of $15,000 and the amount of Lokken's actual liability.[2]

The supreme court also addressed a similar issue in *Gusk v. Farm Bureau Mut. Ins. Co.,* 559 N.W.2d 421 (Minn.1997). There, a plaintiff was involved in an accident with two drivers, one uninsured and the other insured. *Id.* at 422. The plaintiff was insured under a policy providing both uninsured motorist (UM) and UIM coverage. *Id.* The plaintiff notified his insurer that he intended to settle

with the insured defendant for $80,000, but the insurer substituted its draft pursuant to *Schmidt v. Clothier,* and the matter proceeded to trial. *Id.* The insured received a net award of $78,462.74 in damages. *Id.* The insured driver was determined to be 30% at fault, and the uninsured driver was determined to be 50% at fault. *Id.*

The *Gusk* court concluded that although the plaintiff had received $80,000 as damages based on the liability of the insured motorist, the plaintiff remained entitled to receive UM benefits from his insurer, based on the uninsured driver's percentage of fault. *Id.* at 423–25. The court explained: "In multiple tortfeasor cases such as this, the insured's right to receive benefits under the [UM and UIM] policies must be considered one policy at a time." *Id.* at 424. Ricke is only seeking UIM benefits based on the fault of one defendant. Ricke's right to receive UIM benefits from Progressive based on Lokken's status as an underinsured driver depends solely on Lokken's fault and his prior payment to Ricke; the other defendants' fault and their prior payments to Ricke are irrelevant.

■ 2. Ricke sought prejudgment interest on the $30,000 in UIM benefits from the date that the parties stipulated that her damages were $121,000. The district court denied Ricke's claim, and Ricke filed a notice of review.

The supreme court addressed a UIM insured's claim for prejudgment interest in *Lessard v. Milwaukee Ins. Co.,* 514 N.W.2d 556 (Minn.1994). The *Lessard* court concluded that

> because prejudgment interest is an element of compensatory damages, * * * an insurer providing underinsured motorist coverage is not liable for that portion of preaward interest under Minn.Stat. § 549.09, subd. 1(b) (Supp.1991), which, when added to total damages, would exceed policy liability limits.

---

**2.** We note that Ricke sent Progressive a *Schmidt v. Clothier* notice when she settled with Lokken below his policy limits. At that point, Progressive had the opportunity to substitute its draft, thereby preserving its potential subrogation rights against Lokken and forcing the matter to trial. Because Progressive did not substitute its draft, it is liable for UIM benefits, pursuant to its contract with Ricke.

*Id.* at 559. Here, any preaward interest added to total damages would exceed Ricke's policy limit of $30,000 for UIM coverage.

Ricke argues that *Lessard* was based solely on the principle that prejudgment interest under section 549.09 cannot be calculated until the amount on which the interest is based is fixed by verdict. *See id.* at 558 (citing *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn.1988)). Ricke claims that her case involves a different type of prejudgment interest than *Lessard* because the parties' stipulation established the exact amount of damages in the same manner as a jury verdict. Ricke contends that interest on an amount for which liability has been determined is not compensation for the injury that gave rise to liability and, therefore, is not the type of prejudgment interest that is an element of compensatory damages.

We do not agree that *Lessard* was based solely on the principle that prejudgment interest cannot be calculated until the amount on which the interest is based is fixed by verdict. The *Lessard* court went on to explain that prejudgment interest is treated as an element of compensatory damages because it is " 'awarded to provide full compensation by converting time-of-demand * * * damages into time-of-verdict damages.' " *Id.* (quoting *Lienhard*, 431 N.W.2d at 865) (omission in original). By setting forth the amount of Ricke's damages, the stipulation made it possible to calculate an interest award based on a specific amount. But the purpose of any interest award would still be to compensate Ricke for the lost use of money between the time of the stipulation and the verdict.

In *Lessard*, the court acknowledged that awarding prejudgment interest to Lessard would fully compensate him for his lost use of money, but declined to award prejudgment interest because Lessard had already received an award that equaled the monetary limitation on liability in his UIM policy. *Id.* Similarly, awarding Ricke prejudgment interest would compensate her for the lost use of money. But, as in *Lessard*, any prejudgment interest added to Ricke's award would be in excess of the liability limits of her UIM policy.

## DECISION

Ricke is entitled to UIM benefits from Progressive based on Lokken's underinsured status, despite Ricke's prior settlements with all defendants for an amount equal to her total damages, because the settlements occurred before apportionment of liability and damages. The district court properly denied Ricke's request for prejudgment interest.

**Affirmed.**