Stuart BEHR, et al., Respondents,

v.

## AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

No. C0-01-952.

Court of Appeals of Minnesota.

Jan. 29, 2002.

Susan F.K. Bieniek, Wagner, Falconer & Judd, Ltd., Minneapolis, MN, for respondent.

Katherine A. McBride, Meagher & Geer P.L.L.P., Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, ANDERSON, Judge, and MULALLY, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

Respondent Stuart Behr was injured in a car accident caused by Mark Bates and together with his wife Roxanne made claims against Bates. Bates's personal automobile liability insurer paid respondents $100,000 because Bates was the at-fault driver in the accident. Respondents also negotiated a second settlement with Bates's employer's insurer, United States Fidelity & Guaranty Company (USF & G), for approximately $400,000. Although USF & G denied that its $1 million business-automobile liability policy insured Bates's automobile because Bates's employer did not own the automobile, it decided to settle respondents' claim, apparently to avoid litigation of the coverage issue.

Respondents subsequently brought an underinsured-motorist (UIM) action against appellant American Family Mutual Insurance Company, their own insurer, alleging that their damages exceeded the $100,000 paid by Bates's personal liability insurer. Appellant initially moved to dismiss respondents' claim, and then moved for summary judgment alleging that respondents' approximately $400,000 settlement with USF & G must be considered in determining whether UIM reimbursement was required under Minnesota law. The district court denied appellant's motion for summary judgment and awarded respondents $100,000, the full amount of respondents' UIM coverage with appellant. Appellant argues that the district court erred as a matter of law when it disregarded respondents' $400,000 settlement with USF & G in determining whether Minnesota law mandates UIM reimbursement from appellant. We affirm.

## FACTS

This case comes before this court on stipulated facts. On March 25, 1995, respondent Stuart Behr was seriously injured when his automobile collided with an automobile driven by Mark Bates, an employee of 21st Century Genetics. At the time of the accident, respondents carried $100,000 in UIM coverage with appellant. Bates's personal automobile insurer, State Farm Insurance Company (State Farm), insured Bates, the at-fault-driver, for $100,000.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

The parties stipulate that Bates was acting within the scope and course of his employment with 21st Century Genetics at the time of the accident and that 21st Century Genetics carried a $1 million business-automobile liability policy with USF & G. USF & G, however, disputed that its policy covered Bates's personally-owned automobile, and, consequently, the Behr/Bates accident. USF & G maintained that because Bates owned his automobile the business-automobile policy specifically excluded the automobile from the policy's coverage.

Respondents notified appellant, pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), that they had negotiated a settlement with Bates's insurer, State Farm, for $100,000. Appellant declined to substitute its check to preserve its subrogation rights against Bates. Respondents also settled with USF & G for approximately $400,000 of the $1 million policy insuring 21st Century Genetics. Pursuant to the settlement agreement, however, USF & G did not admit that its policy covered Bates's automobile. Nevertheless, in exchange for receipt of the approximately $400,000 from USF & G, respondents agreed to release Bates, 21st Century Genetics, State Farm, and USF & G from all claims arising out of the Bates/Behr accident. For purposes of this appeal, the parties also stipulate that respondents' damages are at least $200,000.

The district court concluded that respondents were entitled to $100,000 in UIM reimbursement, the full amount of respondents' UIM policy. The district court agreed with respondents that the approximately $400,000 settlement with USF & G must be ignored in determining whether respondents were entitled to UIM reimbursement because it found that the USF & G policy did not apply to Bates's auto-mobile at the time of the accident. This appeal followed.

## ISSUES

I. Must an at-fault driver's employer's business-automobile policy be considered in determining whether an at-fault driver's vehicle is underinsured, if the employer's insurer settles with an UIM insured but denies that its policy covers the at-fault vehicle?

II. Must an UIM insured's settlement with an at-fault driver's employer's insurer be considered in determining an UIM insurer's maximum UIM liability?

## ANALYSIS

When a district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998) (citing *Wallin v. Letourneau*, 534 N.W.2d 712, 715 (Minn.1995)). "The facts here are undisputed, so the only issue is the correct application of the No Fault Act." *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 745 (Minn.2001). "Statutory interpretation is a question of law subject to de novo review." *Id.* (citing *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985)).

I. Must an at-fault driver's employer's business-automobile policy be considered in determining whether an at-fault driver's vehicle is underinsured, if the employer's insurer settles with an UIM insured but denies that its policy covers the at-fault vehicle?

Appellant first argues that the district court erred by refusing to consider USF &

G's $1 million business-automobile policy limit in determining whether Bates's vehicle was underinsured as a matter of law.

Minn.Stat. § 65B.43, subd. 19 (2000)[1] defines "underinsured motorist coverage" as

> coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles.

The supreme court recently discussed the tumultuous history of the No Fault Act's UIM provisions. *See generally Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598 (Minn.2001). The supreme court recognized,

> There are four general types of UIM coverage systems—difference of limits, damages less limits, limits less paid, and damages less paid—and Minnesota has

utilized each of these types at some point in the last 30 years.

*Id.* at 600 (citing Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L.Rev. 857, 865–66 (1998)).[2]

■ Since 1989, Minnesota has employed a "damages-less-paid" system where UIM "coverage begins where payment from the tortfeasor leaves off." *Id.* at 603. Therefore, to calculate whether an UIM insured is entitled to UIM reimbursement, a tortfeasor's damages payment is subtracted from an UIM insured's total damages. Moreover, the damages-less-paid system expressly permits below-limit settlements. *Id.* Therefore, if an UIM insured settles with a tortfeasor for less than the tortfeasor's policy limit, the UIM insurer must cover the "gap" be-

1. Although the Bates/Behr accident occurred in 1995, most of the relevant statutory provisions have not substantively changed; therefore, all citations will be to the 2000 Minnesota Statutes unless otherwise noted. *See McClelland v. McClelland*, 393 N.W.2d 224, 226–27 (Minn.App.1986) (citing *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 717, 720, 94 S.Ct. 2006, 2020–21, 40 L.Ed.2d 476 (1974)), *review denied* (Minn. Nov. 17, 1986).

2. Before the 1975 No–Fault Act, Minnesota employed
"difference of limits" coverage, which meant that UIM benefits would become available only to the extent that the damages and the UIM policy limit were greater than the limit on the tortfeasor's policy. *Dohney*, 632 N.W.2d at 601 (citation omitted). An insured would be entitled to UIM reimbursement equal to the difference between his UIM policy limit and the tortfeasor's policy limit, if the tortfeasor's policy limit was less than the UIM policy limit.
Under the 1975 No–Fault Act, UIM coverage became " 'damages less limits' or 'add-on' coverage." *Id.* (citation omitted). Under this system,

the amount of UIM benefits available is calculated by subtracting the tortfeasor's policy limit from the injured UIM policyholder's damages, [but] UIM payments could not exceed the UIM limit. *Id.* "[B]elow policy limit settlements with the tortfeasor were allowed, but the injured UIM policyholder would have to absorb [any] gap" or absorb the difference between the tortfeasor's policy limit and the amount of the below-limit settlement. *Id.*

Due to legislative repeal, from April 1980 through October 1985, there were no UIM provisions in Minnesota. *Id.* at 602. "In 1985, the legislature made major revisions in the No–Fault Act" and "changed the UIM coverage * * * to 'limits less paid' coverage" where an UIM insured "could recover the difference between his UIM [policy] limit and the amount of damages recovered from the tortfeasor." *Id.* (citation omitted). The limits-less-paid system differed from the pre-No-Fault Act difference-of-limits system in that it "d[id] not require the insured to absorb the gap resulting from any below-limit settlement with the tortfeasor." *Id.* (citation omitted).

tween the tortfeasor's policy limit and the amount of the below-limit settlement. *Id.*

■ In order for an UIM insured to receive UIM reimbursement, however, an underinsured vehicle must be involved in the accident. *See Royal–Milbank Ins. Co. v. Busse,* 474 N.W.2d 441, 442 (Minn.App. 1991). Minn.Stat. § 65B.43, subd. 17 (2000) defines "underinsured motor vehicle" as a vehicle

> to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages.

■ "Whether a vehicle is underinsured is an issue of law, which this court may decide without deferring to the district court." *Ricke v. Progressive Specialty Ins. Co.,* 577 N.W.2d 512, 514 (Minn.App. 1998) (citation omitted), *review denied* (Minn. June 17, 1998). It is undisputed that the State Farm policy applied to Bates's vehicle at the time of the accident. It is disputed, however, whether the USF & G policy applied to Bates's vehicle; indeed, USF & G denies coverage notwithstanding its settlement with respondents.

■ Examining the statute, and affording the statutory language its common and approved usage, we conclude that the district court did not err by not considering the $1 million USF & G policy limit in determining whether Bates's vehicle was underinsured.

The district court concluded that the USF & G policy did not apply to Bates's vehicle. The court noted,

> The USF & G policy scheduled 221 separate vehicles in the Business Auto Policy (which are the vehicles the employer presumably owned) but not the Bates vehicle. The policy attempted to exclude from its "insureds" the vehicles owned by individual employees. The at-

fault vehicle was not owned, operated, or driven by the entity insured by the USF & G policy: 21st Century Genetics.

Appellant declined to appeal the district court's conclusion that the USF & G policy did not apply to Bates's vehicle. Indeed, at oral argument, appellant admitted that the USF & G policy did not cover Bates's automobile and that it was not appealing the district court's coverage conclusion.

■ Because appellant failed to raise the coverage issue on appeal, it is waived. *See Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). *See generally State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn.1997) (declining to reach issue in absence of adequate briefing); *Ganguli v. Univ. of Minn.,* 512 N.W.2d 918, 919–20 n. 1 (Minn. App.1994) (appellate courts may decline to address allegations unsupported by legal analysis or citation). Consequently, we must assume that the only policy that applied to Bates's vehicle at the time of the accident was Bates's $100,000 State Farm policy.

Appellant, however, though not directly contesting the district court's coverage determination, advances a more subtle and novel coverage theory on appeal. Appellant argues that both the $100,000 State Farm policy limit and the $1 million USF & G policy limit must be considered in determining whether Bates's vehicle was underinsured, not because Bates's vehicle was covered by the USF & G policy, but because the $400,000 settlement converted the USF & G policy into a policy that applied at the time of the accident.

Appellant argues that it is legally significant that the USF & G payment, by way of the release documents effecting the settlement, not only discharged USF & G and 21st Century Genetics from further liability, but also discharged Bates. According

to appellant, when USF & G paid respondents approximately $400,000 "the question * * * whether Bates was an insured under the USF & G policy became moot."

Appellant cites two uninsured-motorist cases to support its position that the $1 million USF & G policy limit must be considered to determine the narrow question whether Bates's vehicle was underinsured at the time of the accident. *See generally Nat'l Family Ins. v. Bunton*, 509 N.W.2d 565 (Minn.App.1993); *Jones v. Sentry Ins. Co.*, 462 N.W.2d 90 (Minn.App. 1990).

In *Jones*, a passenger died in a one-vehicle accident. *Jones*, 462 N.W.2d at 91. A business owned the vehicle and two insurance companies insured the vehicle under commercial/business-automobile liability policies. *Id.* Both insurance companies denied liability for the passenger's death. The parties eventually settled the coverage dispute and Jones, as trustee for the passenger's next-of-kin, received an $87,500 settlement from the two companies. *Id.* Jones subsequently brought a declaratory-judgment action against the deceased passenger's uninsured-motorist insurer, Sentry Insurance Company, to establish the "applicability of the uninsured motorist policy." *Id.* This court found that Jones was not entitled to uninsured-motorist reimbursement. *Id.* at 92.

This court recognized,

> Where a liability carrier initially denies coverage of a motor vehicle but prior to trial admits coverage, the vehicle "is *not* an uninsured motor vehicle within the meaning of the policy provision." *Fryer v. Nat'l Union Fire Ins. Co.*, 365 N.W.2d 249, 254 (Minn.1985) (emphasis in original). A motor vehicle is also not uninsured if a liability carrier initially denies coverage and settles without ever admitting coverage. *Rister*

*v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132, 136 (Mo.App.1984).

*Id.* at 91. Consequently, this court concluded that despite the two insurance companies' "continued denial of coverage, once Jones accepted the settlement offers, Sentry was no longer potentially liable under its uninsured motorist policy." *Id.*

In *Bunton*, the plaintiff was injured in a one-vehicle accident when his vehicle encountered fertilizer spilled on the road. *Bunton*, 509 N.W.2d at 566. An investigation suggested a truck owned and operated by an unrelated third-party was the source of the fertilizer. *Id.* Bunton sued the third-party for negligence and the third-party denied that he spilled the fertilizer, and, consequently, denied liability for Bunton's injuries. The third-party eventually settled Bunton's liability claim but continued to deny liability. *Id.* at 566–67. Bunton sought uninsured-motorist reimbursement and the district court denied his claim. *Id.* at 567. This court, relying on *Jones*, affirmed.

The *Bunton* court dismissed Bunton's argument "that [his] case differ[ed] from *Jones* because [the third-party's] insurer did not initially deny coverage." *Id.* It found that "*Jones* held that the insurer's potential liability under its [uninsured-motorist] policy ended because Jones accepted settlement offers * * * not because the liability insurers admitted coverage." *Id.* at 567–68 (citation omitted). Therefore, this court concluded that an uninsured-motorist insurer's potential liability ends when an uninsured-motorist insured accepts a settlement from a third-party's liability insurer "despite the liability insurer's continued denial of liability." *Id.* at 568.

Respondents argue that *Ricke v. Progressive Specialty Ins. Co.* should control our analysis in this case. In *Ricke*, a passenger was injured in a two-vehicle ac-

cident. Ricke sued Lokken (the at-fault driver and the driver of the vehicle she was riding in), the owner of the other vehicle, and the two establishments that served Lokken alcohol on the night of the accident. *Ricke,* 577 N.W.2d at 513. The two dram shops deposited $400,000 with the court and Lokken deposited $60,000, the full amount of his personal liability policy. *Id.* Because there were other victims, Ricke accepted a $121,000 settlement, which included $15,000 from Lokken. *Id.* at 514. Ricke sent her UIM insurer, Progressive Specialty Insurance Company (Progressive), a Schmidt v. Clothier notice and Progressive declined to substitute its check. *Id.* After Ricke released all of the defendants, she sued Progressive for UIM benefits. Progressive defended the suit on the ground that Ricke was

> not entitled to UIM benefits as a result of Lokken's liability because she settled with all defendants * * * and the settlement equaled the full amount of her damages.

*Id.* This court rejected Progressive's arguments.

This court first found that it was critical that Ricke had decided to settle before there was an apportionment of fault and damages. This court then concluded,

> It is undisputed that Lokken's liability limits were insufficient to compensate Ricke for the stipulated amount of damages attributed to his fault. Because, as

a matter of law, Lokken was underinsured, Progressive is liable, up to its policy limits, for the difference between the settlement amount of $15,000 and the amount of Lokken's actual liability.

*Id.* at 515 (footnote omitted).

Appellant's reliance on *Jones* and *Bunton* as directly supporting its claim that the USF & G settlement converted the USF & G policy into a bodily injury liability policy that applied to the at-fault vehicle at the time of the accident overextends each holding. Respondents' reliance on *Ricke,* however, is also not persuasive, because *Ricke* addressed a set of facts where there were multiple tortfeasors with varying degrees of fault, which is not the case here.

First, appellant's interpretation of the statute directly contradicts the definition of "underinsured motor vehicle." *See* Minn.Stat. § 65B.43, subd. 17. The statute defines "underinsured motor vehicle" as a vehicle "to which a bodily injury liability policy applies at the time of the accident." *Id.* The district court concluded that the USF & G policy did not apply at the time of the accident and appellant does not appeal this determination.[3]

It is difficult, therefore, to accept appellant's argument that because a third-party settlement releases an at-fault driver, that settlement also converts a disputed policy into a policy that applied at the time of the accident.[4] Appellant cites no authority for

---

**3.** The existence of a coverage dispute precludes reliance on *Royal–Milbank v. Busse,* where this court included a business-automobile policy to determine whether the at-fault vehicle was underinsured. In *Busse,* the business-automobile policy's coverage was apparently uncontested. *See Busse,* 474 N.W.2d at 442–43.

**4.** At least commentator, however, would apparently disagree with our view. Theodore Smetak notes,

> All liability policies which insure the negligent operation of the tortfeasor's vehicle are considered in determining underinsurability. Thus, in addition to the owner's coverage, the liability coverage available to the operator of the vehicle, to the tortfeasor's employer or to any other vicariously liable party will be considered. This approach is consistent with the conceptual basis of underinsured motorist coverage. Coverage is accessed only if there is not

this proposition, other than referring to the definition of "underinsured motor vehicle." Moreover, appellant advances no authority supporting its view that it is legally significant that the USF & G settlement released Bates from further liability, in addition to USF & G and 21st Century Genetics.[5]

Therefore, because the district court did not conclude that the USF & G policy applied at the time of the accident, and because appellant has not appealed the district court's coverage determination, we conclude that Bates's vehicle was underinsured as a matter of law at the time of the accident because Bates's $100,000 State Farm policy is less than respondents' damages, which are at least $200,000.

    II.   Must an UIM insured's settlement with an at-fault driver's employer's insurer be considered in determining an UIM insurer's maximum UIM liability?

*A.   UIM Insurer's Maximum Liability: Minn Stat. § 65B.49, subd. 4a*

    ■  If an accident involving an underinsured motor vehicle injures an UIM insured, an UIM insurer's maximum liability is determined, as noted above, by the damages-less-paid method. *See Dohney*, 632 N.W.2d at 603. Minn.Stat. § 65B.49, subd. 4a (2000) limits an UIM insurer's maximum liability:

With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the *driver or owner of any underinsured at fault vehicle.* * * * However, in no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits.

(Emphasis added.)

Therefore, although Bates's vehicle was underinsured as a matter of law, § 65B.49, subd. 4a may limit appellant's UIM liability exposure to less than respondents' $100,000 UIM policy limit.

We conclude, with great reservation, that the plain language of § 65B.49, subd. 4a mandates that the USF & G settlement is not considered in determining appellant's maximum UIM liability. It is undisputed that respondents suffered at least $200,000 in damages. It is also undisputed that Bates was the driver and owner of the at-fault vehicle, and that he carried a $100,000 personal liability policy with State Farm. Therefore, respondents are legally entitled to $100,000 in UIM reimbursement from appellant because the only payment recovered from the driver or owner of the underinsured at-fault vehicle was Bates's $100,000 State Farm payment.

---

enough liability insurance available to pay for damages caused by a negligent motorist. Smetak, *supra*, at 881–82. Smetak, however, only cites *Busse* (and no statutory authority) for this proposition and his argument apparently assumes, as was the case in *Busse*, that there is normally no dispute whether an employer's policy applies to an at-fault vehicle at the time of the accident. Of course, such a dispute is present here.

5.  This is not to say that appellant's reliance on *Jones* and *Bunton* is completely without merit. The *Jones* court concluded, "A motor

vehicle is also not uninsured if a liability carrier initially denies coverage and settles without ever admitting coverage." *Jones*, 462 N.W.2d at 91 (citation omitted). We could easily substitute "underinsured" for "uninsured" and reach the arguably defensible result that the USF & G policy applied at the time of the accident. This conclusion, however, could not be grounded in the statutory definition of "underinsured motor vehicle" and the statutory language must control, especially here, where UIM benefits are at issue as opposed to UM benefits.

In addition to the plain language of § 65B.49, subd. 4a, a historical analysis of an earlier version of § 65B.49, subd. 4a buttresses our conclusion that the USF & G payment must not be considered in determining appellant's maximum UIM liability. In 1989, the legislature amended § 65B.49, subd. 4a. *See* 1989 Minn. Laws 648, c. 213, § 2. The 1989 amendment, however, did not change the pre 1989 definition of "underinsured motor vehicle." *See* Minn.Stat. § 65B.43, subd. 17 (1988). Before the 1989 amendment, Minn.Stat. § 65B.49, subd. 4a (1988) provided:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the *amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury;* or the amount of damages sustained but not recovered.

(Emphasis added.) The pre 1989 statutory scheme, therefore, employed a limits-less-paid system that compared an UIM insured's policy limit with the total amount paid to the UIM insured, including payments "by or for any person or organization who *may* be held legally liable for the bodily injury." *Id.* (emphasis added).

Under the pre–1989 statutory scheme, the USF & G settlement would likely have to be considered in determining appellant's maximum UIM liability. USF & G, an organization that "may be held legally liable for the bodily injury" paid approximately $400,000 "by or for" USF & G, 21st Century Genetics, and the at-fault driver Bates. *See generally Broton v. W. Nat'l Mut. Ins. Co.*, 428 N.W.2d 85, 90 (Minn. 1988).

The current statutory provision, however, does not contain this all-encompassing-payment language. As noted above, the current provision states that an UIM in-surer's maximum liability is calculated by subtracting the amount of damages "recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle" from the "amount of damages sustained." Minn.Stat. § 65B.49, subd. 4a (2000). Moreover, the current procedure for calculating maximum UIM liability, which disregards payments from other potentially liable sources, is consistent with the current definition of "underinsured motorist coverage": coverage for persons "legally entitled to recover damages for bodily injury from *owners or operators* of underinsured motor vehicles." Minn.Stat. § 65B.43, subd. 19 (2000) (emphasis added).

We must assume that the legislature, by omitting the all-encompassing-payment language found in the pre 1989 statute, intended to substantively alter how maximum UIM liability should be calculated. *See Geldert v. Am. Nat'l Bank*, 506 N.W.2d 22, 26 (Minn.App.1993) (stating than an amendment to a statute is presumed to effect a change in the law), *review denied* (Minn. Nov. 16, 1993); *see also Ullom v. Indep. Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994) (suggesting that courts cannot add to a statute "what the legislature purposely omits or inadvertently overlooks" (quotation omitted)).

■ Furthermore, the supreme court has made it clear that the legislature is free to ignore logic and perpetrate injustice so long as it does not violate the constitution; if the statute is clear it must be remedied by amendment rather than by construction. *State ex rel. Coduti v. Hauser*, 219 Minn. 297, 303, 17 N.W.2d 504, 507–08 (1945); *see also Dohney*, 632 N.W.2d at 606 (noting that the supreme court is "hesitant to judicially alter the UIM procedures established by the legislature and in the process possibly adversely

affect the delicate balance between the rights of UIM insureds and UIM insurers").

We therefore conclude that Minn.Stat. § 65B.49, subd. 4a mandates that the approximately $400,000 USF & G settlement is not considered in determining appellant's maximum UIM liability.

## B. Purposes of UIM Coverage

Appellant argues in the alternative that despite the statutory language, the USF & G settlement should be considered by the district court in determining its maximum UIM liability. Appellant claims that to refuse to do so would be inconsistent with the purpose of UIM insurance: to compensate, but not overcompensate, an UIM insured for her injuries. Appellant's argument can be summed up by its essential theme on appeal: "[A] claimant cannot accept a substantial insurance settlement—here $400,000—and then contend that those benefits never existed."

Appellant correctly recognizes that a primary objective of the No Fault Act "is to compensate injured persons without allowing for double recoveries." *Dean v. Am. Family Mut. Ins. Co.*, 535 N.W.2d 342, 344 (Minn.1995) (citations and footnote omitted); *see also Richards v. Milwaukee Ins. Co.*, 518 N.W.2d 26, 28 (Minn.1994) (stating that prevention of double recovery is "a primary objective of the no-fault act"). Indeed, the No Fault Act itself recognizes that one of its purposes is "to prevent the overcompensation of * * * automobile accident victims." Minn.Stat. § 65B.42(2) (2000).

The legislature, however, has made it clear that legislative intent and the spirit of the law, if any such intent or spirit can be ascertained, cannot override the plain language of a statute.

*Olson v. Am. Family Mut. Ins. Co.*, 636 N.W.2d 598, 604 (Minn.App.2001) (citation omitted). Although the No–Fault Act's purposes may in some sense be served by disregarding the plain language of the statute in this case, the construction afforded the statute above does not rise to the level of an absurdity, which may, in some cases, permit this court to disregard plain language and embrace a purposive construction. *See* Minn.Stat. § 645.17(1) (2000) (courts should presume that the legislature does not intend results that are "absurd, impossible of execution, or unreasonable"). Here, the legislature had the opportunity to retain the all-encompassing-payment language when it amended Minn. Stat. § 65B.49, subd. 4a in 1989. It did not do so. *See Thompson v. Allstate Ins. Co.*, 412 N.W.2d 386, 388–89 (Minn.App. 1987) (" 'Public policy, where the legislature has spoken, is what it has declared that policy to be. So far as the question of policy is concerned, our statute settles the matter.' " (quotation omitted)), *review denied* (Minn. Nov. 13, 1987).

We therefore decline to disregard the No Fault Act's plain language to achieve what appellant argues is the more just and logical result.

Finally, because we conclude that the $400,000 USF & G settlement is not considered in determining appellant's maximum UIM liability, we decline to consider appellant's alternative argument that the $400,000 USF & G settlement was not a "best settlement." We recognize, however, that *Dohney* forecloses appellant's argument because the supreme court held that a best settlement is simply "an insured's best settlement." *Dohney*, 632 N.W.2d at 607.

## DECISION

Because the USF & G policy did not apply to Bates's vehicle at the time of the

accident, it is not considered in determining whether Bates's vehicle was underinsured. Moreover, because Minn.Stat. § 65B.49, subd. 4a mandates that an UIM insurer's maximum liability is the difference between the amount of damages sustained but not recovered from the driver or owner of an underinsured at-fault vehicle, the USF & G settlement payment is not included in the amount of damages recovered.

**Affirmed.**