**Rodney Lynn RICHARDS, Respondent,**

v.

**MILWAUKEE INSURANCE CO., Petitioner, Appellant.**

No. C2-93-596.

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied Aug. 18, 1994.

Gregory J. Johnson, Theodore J. Smetak, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for appellant.

John T. Buchman, John J. Gores, Sovcie & Buchman, Ltd., Anoka, for respondent.

Wilbur W. Fluegel, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for amicus curiae MN Trial Lawyers Assoc.

Kay Nord Hunt, Marc A. Johannsen, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Amicus Curiae Ins. Federation of MN.

**OPINION**

GARDEBRING, Justice.

This case involves the interpretation of the term "actual damages" in the statutory definition of "underinsured motor vehicle." At issue is whether no-fault benefits paid by the injured party's insurer are to be deducted from any tort recovery before or after actual

damages are calculated for purposes of determining whether a vehicle is underinsured, triggering underinsured motorist coverage. This is an issue of first impression for this court.

Rodney Lynn Richards suffered permanent injuries in a two-car accident in September 1988. Richards carried no-fault and underinsurance (UIM) coverage purchased from appellant, Milwaukee Insurance Company (Milwaukee). The driver of the other car, Michael Grosskreutz was insured at the time with a liability limit of $30,000 in bodily injury coverage. In January of 1992, Richards, with proper notification to Milwaukee,[1] settled his claim against Grosskreutz for $20,000. Richards then made a claim for underinsured motorist benefits from Milwaukee, contending his damages exceeded Grosskreutz's $30,000 liability limit.

Prior to the trial Milwaukee paid Richards $3,433.36 in no-fault medical expense benefits. Additional medical expenses in the amount of $1,367.14 were in dispute and were subject to mandatory no-fault arbitration; however, the parties agreed to waive arbitration and present the no-fault claim to the jury along with the UIM claim. The parties stipulated that Grosskreutz was 100% causally negligent in the collision, so that liability was admitted and the only issue for the jury was that of damages.

The jury awarded Richards $34,690.50 in total damages. The award included $4,800.50 for past medical expenses, comprised of the $3,433.36 already paid by Milwaukee and the entire amount of the disputed no-fault claim, $1,367.14, which Milwaukee paid in full after the verdict. The trial court concluded that no-fault benefits must be deducted from the total damages awarded by the jury before determining whether a vehicle is underinsured. The trial court found that Richards had sustained "actual dam-

ages" (total damages, exclusive of those covered by no-fault benefits) of $29,890. Because the $29,890 in actual damages did not exceed the $30,000 liability limit of the tortfeasor's coverage, the trial court concluded that Grosskreutz's vehicle was not underinsured and Richards was not entitled to underinsurance coverage. The trial court dismissed Richard's UIM claim. Richards appealed.

The court of appeals reversed, holding that the term "actual damages" refers to all damages suffered, notwithstanding the fact that the source of payment for some damages may be no-fault coverage. The court of appeals found that Grosskreutz was underinsured, and that Richards was entitled to underinsurance coverage in the amount of the difference between the verdict and the $20,000 settlement, since his "actual damages" of $34,690.50 exceeded the tortfeasor's $30,000 liability limit. *Richards v. Milwaukee Ins. Co.*, 505 N.W.2d 97 (Minn.App.1993). We reverse.

The issue before us is the timing of the deduction of no-fault benefits from a tort recovery under Minn.Stat. § 65B.51, subd. 1 (1988). That is, we must determine whether the amount of "actual damages" in the definition of an underinsured motor vehicle is to be determined before or after deducting no-fault benefits. An underinsured motor vehicle is defined in Minn.Stat. § 65B.43, subd. 17 (1988) as:

> a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is *less than the amount needed to compensate the insured for actual damages.*[2]

(emphasis added). The term "actual damages" used in the definition of an underinsured motor vehicle is not defined within the statute.

---

1. Richards gave the 30 day written notice of the proposed settlement as required under *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983). This notice allows the UIM carrier to preserve its subrogation rights by either paying the UIM benefits or by substituting its draft for that of the tortfeasor's liability insurer. If the UIM carrier does not substitute its draft within 30 days, the claimant is free to settle with the defendant, execute a general release, and still pursue a

claim for UIM benefits. *Id. See also Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 (Minn.1993); *American Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 927 (Minn.1990).

2. The definition of underinsured motor vehicle in the Milwaukee policy closely parallels the statutory definition.

Further, Minn.Stat. § 65B.51, subd. 1 (1988) requires that economic loss benefits offset any tort recovery as follows:

[T]here shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible.

Richards contends that this no-fault offset occurs only to prevent a double recovery, not to deprive an injured party of full compensation, and that the offset provision does not define an underinsured vehicle but rather determines the amount of UIM benefits payable. Milwaukee counters that UIM coverage is a tort based coverage and is predicated upon the amount that the injured person would be legally entitled to recover from the tortfeasor. Therefore, the determination of whether or not the tortfeasor's bodily injury limits are sufficient cannot logically be made without considering the extent of the tortfeasor's legal obligation, which does not include those damages covered by no-fault benefits. Milwaukee concludes the no-fault offset should be taken before determining whether the tortfeasor is underinsured. We find Milwaukee's argument persuasive.

UIM coverage is a tort based coverage designed to provide a supplemental source of recovery only when the damages that the insured is legally entitled to recover from the tortfeasor exceed the tortfeasor's liability insurance limits. The tort judgment establishes conclusively the damages to which the claimant is legally entitled, and if these damages exceed the tortfeasor's liability insurance limits, the excess is payable by the underinsurance carrier to the extent of its coverage without the need for arbitration. *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 858–59 (Minn.1993).

The offset provision of Minn.Stat. § 65B.51, subd. 1, was specifically designed to prevent double recovery, a primary objective of the no-fault act. *Bartel v. New Haven Township*, 323 N.W.2d 806, 808–09 (Minn.1982). The possibility of a double recovery is avoided if the insured recovers from the tortfeasor only amounts not compensated by basic economic loss benefits. *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 614 (Minn.1988). Thus, basic economic loss benefits are deducted from the insured's total damages under § 65B.51, subd. 1, to prevent the tortfeasor having to pay for damages paid or payable by the no-fault carrier.

Under this statutory scheme, it is clear that UIM coverage is tort based. Certain damages are paid without regard to the liability of the tortfeasor under first-party no-fault coverage. UIM benefits work as substitute liability coverage, but where there is no liability, there is no coverage. In this case, the amount of no-fault benefits received by Richards reduced the tort liability of the negligent party below the limits of the bodily injury coverage; therefore, there is no UIM coverage.[3]

The term "actual damages" as used in the statutory definition of underinsured motor vehicle refers to the total liability of the tortfeasor, exclusive of those damages paid by no-fault coverage. A vehicle is not underinsured when it is covered by a policy which is sufficient to satisfy the full amount of the tortfeasor's liability.

Reversed.

---

**3.** As an alternative basis, Richards argues that Milwaukee should not be allowed to pay no-fault benefits after the verdict, to reduce the jury award to an amount under the tortfeasor's liability limits, and thereby eliminate its "gap" liability. Richards argues that offsetting for the $3,344.36 in benefits actually paid *prior to trial* would leave damages of $31,257.14, an amount in excess of Grosskreutz's liability limit, allowing Richards to recover under his UIM coverage.

Richards settled with Grosskreutz, pursuant to the requirements of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). Milwaukee waived its subrogation claim when it declined to substitute its draft for the settlement amount, and thus became liable for any gap remaining *if* Grosskreutz was underinsured. *Broton v. Western Nat'l Mut. Ins. Co.*, 428 N.W.2d 85, 89–90 (Minn. 1988). However, Richards took the risk of a jury verdict which, when no-fault benefits were deducted, awarded damages in an amount less than Grosskreutz's liability limit. The fact that some of those no-fault benefits were paid after the verdict, rather than before, does not change the outcome.