Dale E. DEAN, et al., Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Petitioner, Appellant.

No. C5-94-1042.

Supreme Court of Minnesota.

Aug. 4, 1995.

Joe E. Thompson, Schmidt, Thompson, Johnson & Moody, P.A., Willmar, for appellant.

Ronald H. Schneider, Schneider Law Office, Willmar, for respondents.

## OPINION

GARDEBRING, Justice.

In a claim for underinsured motorist benefits, the trial court applied the collateral source provision in Minn.Stat. § 548.36 (1994) to reduce the aggregate damage award before subtracting the amount associated with the claimant's comparative fault, as determined in an earlier jury trial. The court of appeals affirmed, and we reverse.

While driving his own car, Dale Dean, the plaintiff-respondent in this matter, was injured in a two-car collision with a vehicle driven by Nathan Sing. The passenger in Sing's car was killed, and the trustee for her heirs and next of kin brought an action against both Sing and Dean. In that action, Dean was only a party defendant and did not assert any personal injury cross-claim against Sing. The jury found Dean 10 percent at fault and Sing 90 percent at fault. Dean settled with Sing's insurer for the policy limits of $100,000 and gave proper notice to American Family Mutual Insurance Company (AFM), his underinsured motorist (UIM) carrier.

Dean then asserted a claim against AFM to collect underinsured motorist benefits. The only issue presented to the jury was the amount of damages Dean was entitled to collect. The jury awarded Dean $353,646. The trial judge initially determined that Dean's 10 percent fault should be deducted

from the jury's damage award, and then the $100,000 settlement award Dean received from Sing's insurer should be subtracted. As a result, the trial court issued a judgment against AFM for $218,281.40.[1] However, Dean brought a timely post-trial motion requesting the court apply the collateral source statute, Minn.Stat. § 548.36, and amend the judgment by reducing the aggregate damage award by the settlement award before applying Dean's 10 percent comparative fault. The trial court applied the collateral source rule and amended the judgment against AFM to reflect a damage award in the amount of $228,281.40, a difference of $10,-000.[2] The court of appeals upheld the amended judgment and AFM appealed.

■ The only issue we must address is whether an automobile accident liability insurance payment from an underinsured tortfeasor triggers the collateral source rule in a claim for underinsured motorist benefits when the claimant is partially at fault. Where there is no dispute of facts, a *de novo* standard of review is applied to determine whether the lower courts erred in their application of the law. *State by Cooper v. French,* 460 N.W.2d 2 (Minn.1990).

■ First, we turn to the relevant statutory provision known as the collateral source rule. Minn.Stat. § 548.36 (1994) provides:

**Subd. 1.** For purposes of this section, "collateral sources" means payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to:

\*    \*    \*    \*    \*    \*

(2) health, accident and sickness, or automobile accident insurance or liability insur-

---

1. The trial court's initial computation provided:

| | |
|---|---|
| Aggregate Damages | $353,646.00 |
| Less Dean's Fault (10%) | $ − 35,364.60 |
| Net Damages | $318,281.40 |
| Less Liability Insurance Payment | $ − 100,000.00 |
| **Uncompensated Damages** | **$218,281.40** |

2. The trial court's amended judgment computed the damages as follows:

| | |
|---|---|
| Aggregate Damages | $353,646.00 |
| Less Liability Insurance Payment | $ − 100,000.00 |
| Net Damages | $253,646.00 |
| Less Dean's Fault (10%) | $ − 25,364.60 |
| **Uncompensated Damages** | **$228,281.40** |

ance that provides health benefits or income disability coverage; * * *

**Subd. 2.** In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted; and

(2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

**Subd. 3.** (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2).

\* \* \* \* \* \*

(c) In any case where the claimant is found to be at fault under section 604.01, the reduction required under paragraph (a) must be made before the claimant's damages are reduced under section 604.01, subdivision 1.

AFM argues that if the tortfeasor, Sing, had been sufficiently covered to fully compensate Dean, then Dean would have received $318,281.40,[3] but by deeming Sing's

$100,000 liability payment a collateral source, the amended judgment awarded Dean $10,-000 more than his actual damages. We agree.

In determining the applicability of the collateral source rule under slightly different circumstances we have held:

> Because the primary purpose of this statute is to prevent double recoveries, no deduction is allowed where subrogation rights are asserted "to ensure that the amount of collateral sources deducted from the award is the amount to which the plaintiff is actually entitled, and does not include amounts plaintiff must ultimately pay over to a subrogee."

*Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 334 (Minn.1990) (*citing Buck v. Schneider,* 413 N.W.2d 569, 572 (Minn.App.1987)).

Similarly, we have consistently held that the purpose of the underinsured provisions of the No–Fault Act is to compensate injured persons without allowing for double recoveries.[4] *See Richards v. Milwaukee Ins. Co.,* 518 N.W.2d 26, 28 (Minn.1994); *Johnson v. American Family Mut. Ins. Co.,* 426 N.W.2d 419, 422 (Minn.1988); *Schmidt v. Clothier,* 338 N.W.2d 256, 261 (Minn.1983). In *Richards* we held:

> UIM coverage is a tort based coverage designed to provide a supplemental source of recovery only when the damages that the insured is legally entitled to recover from the tortfeasor exceed the tortfeasor's liability insurance limits. The tort judgment establishes conclusively the damages to which the claimant is legally entitled, and if these damages exceed the tortfeasor's liability insurance limits, the excess is payable by the underinsurance carrier to the extent of its coverage * * *.

*Richards,* 518 N.W.2d at 28. Thus, both the collateral source rule and the UIM provisions were meant to avoid double recovery. As a

---

**3.** Computed as follows:

| | |
|---|---|
| Aggregate damages | $353,646.00 |
| Less Dean's share of fault (10%) | $ – 35,364.60 |
| Net Damages | $318,281.40 |

**4.** The relevant portion of the No–Fault Act provides:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle. * * * [I]n no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits.

Minn.Stat. § 65B.49, subd. 4a (1994).

result, applying the collateral source rule in this case is unwarranted because it would clearly allow Dean to recover more than the amount needed to compensate him for actual damages.

■ Furthermore, under the facts of this case the collateral source rule is clearly inapplicable because a tortfeasor's liability insurance cannot, by definition, constitute a collateral source. In *Imlay* we said:

Minn.Stat. § 548.36, subd. 1(2), is poorly written, ambiguous, and could conceivably be read as providing for one, two, three or four different types of collateral source benefits. Since there are grammatical and analytical problems with each of the possibilities, the legislature may wish to reexamine this subsection to clarify its intentions.

*Imlay*, 453 N.W.2d at 334. Despite the concerns we expressed in *Imlay*, the legislature has chosen not to clarify the statute. However, while it might not be precisely clear exactly what the legislature meant to include as a collateral source, it is patently clear that a tortfeasor's liability insurance can never be within the definition of collateral source. The *Black's Law Dictionary* definition of "collateral source rule" is helpful:

Under this rule, if an injured person receives compensation for his injuries from *a source wholly independent of the tort-feasor*, the payment should not be deducted from the damages which he would otherwise collect from the tortfeasor. In other words, a defendant tortfeasor may not benefit from the fact that the plaintiff has received money from other sources as a result of the defendant's tort, *e.g.* sickness and health insurance.

*Black's Law Dictionary*, 262 (6th ed. 1990) (emphasis added) (citations omitted). Additionally, we have previously stated that one distinguishing element of a collateral source is that the money or services in reparation of plaintiff's injury is from a source other than the tortfeasor. *See Hueper v. Goodrich*, 314 N.W.2d 828 (Minn.1982); *see also* Richard C. Maxwell, *The Collateral Source Rule in the American Law of Damages*, 46 Minn.L.Rev. 669, 670–71 (1962). The analysis in *Hueper* illustrates why a tortfeasor's liability insur-

ance payment does not trigger the collateral source rule.

The rule has been applied where the plaintiff has received insurance proceeds, employment benefits, gifts of money or medical services, welfare benefits or tax advantages. * * * Various justifications have been given for applying the rule. Where the plaintiff has paid for the benefit such as by buying an insurance policy, the rationale is that the plaintiff should be reimbursed and the tortfeasor should not get a windfall. If the benefit is a gift from a third party, such as an employer, a relative or a charity, the argument is that the donor intended that the injured party receive the gift and not that the benefits be shifted to the tortfeasor. * * * Other reasons for applying the rule are that the wrongdoer should be punished by being made to take full responsibility for his negligence and that the plaintiff will be more fully compensated if he is allowed to recover from the tortfeasor.

*Hueper*, 314 N.W.2d at 830 (citations omitted). As a result, neither the language of the statute nor the underlying justifications for applying the collateral source rule warrant its application in this case.

■ We reverse the court of appeals decision and order the reinstatement of the trial court's original judgment awarding Dean uncompensated damages totalling $218,281.40.

Reversed.