**Dean DO, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
**Respondent.**

**No. A07–1461.**

Court of Appeals of Minnesota.

July 8, 2008.

D. Scott Dunham, D. Scott Dunham, P.A., Stillwater, MN, for appellant.

Tammy M. Reno, Brown & Carlson, P.A., Minneapolis, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; MINGE, Judge; and CONNOLLY, Judge.

## O P I N I O N

MINGE, Judge.

This appeal arises out of a claim by appellant injured party against his automobile-insurance carrier for no-fault and underinsurance benefits. Appellant asserts that the district court erred in rely-

ing on the collateral-source rule to offset the amount recovered in his prior settlement with the tortfeasor's liability insurer against a jury award of damages. Because the prior settlement is a collateral source under Minn.Stat. § 548.36 (2006) and was for general unspecified damages, the district court did not err in deducting it from the ultimate jury award in appellant's action, and we affirm.

## FACTS

On September 13, 2002, Julie Wagner and appellant Dean Do were involved in a car accident in which Wagner was at fault and Do was injured. Do had no-fault and underinsured motorist (UIM) coverage with respondent American Family Mutual Insurance Co. (American Family). He sought no-fault benefits from American Family, but it paid only $865.50 of his no-fault coverage. American Family claimed that the other medical expenses Do submitted to them were not a direct result of the accident and therefore did not represent reasonable and necessary compensation under his no-fault policy. Do also made claims against Wagner, the tortfeasor, to satisfy his damages and settled with Wagner's insurer for $28,000 of her $30,000 automobile-liability-policy coverage. There is no indication that the $28,000 was allocated to any specific items of damage. After that settlement, Do brought suit for additional compensation from his own insurer, respondent American Family, for UIM and no-fault benefits. There was no claim that American Family had acted in bad faith in failing to pay or settle its no-fault policy obligations.

■ At trial, American Family acknowledged coverage but challenged Do's damages.[1] A jury determined that Do had

1. Purely factual issues involving claims for no-fault benefits may also be submitted to arbitration. *Weaver v. State Farm Ins. Cos.,*

sustained total damages arising out of the accident in the amount of $49,416.13. The award was broken down as $3,159 for medical expenses for diagnostic testing and scans, $36,257.13 for medical expenses exclusive of testing and scans, $5,000 for past pain and disability associated with the accident, and $5,000 for future pain and disability. The verdict did not further identify or allocate the damages.

American Family moved for a collateral-source offset and a reduction of the jury award. The district court determined that the $28,000 settlement payment from Wagner's liability insurer constituted a collateral source and ordered it offset from the jury award. Therefore, the district court subtracted the $28,000 paid by Wagner's insurer and $865.50 in no-fault benefits already paid by American Family from the $49,416.13 jury verdict and ordered American Family to pay the remaining $20,550.63. This appeal follows.

## ISSUES

Did the district court err by subtracting appellant's settlement with the tortfeasor from an ultimate jury award as a collateral source?

## ANALYSIS

■ The issue is whether the district court properly applied the "collateral-sources statute," Minn.Stat. § 548.36 (2006), by subtracting Do's prior settlement from the jury award. When there is no factual dispute, we review whether the district court has properly applied the collateral-source rule de novo. *Dean v. Am. Family Mut. Ins. Co.*, 535 N.W.2d 342, 343 (Minn.1995).

609 N.W.2d 878, 882 (Minn.2000). The parties did not engage in this option.

### A. The No–Fault Setting

■ At the outset, it is essential to clarify the unique circumstances of this case. A vehicle is underinsured for the purposes of UIM coverage if no-fault coverage and the tortfeasor's liability-insurance coverage on the vehicle are inadequate to satisfy the injured party's damages. *Richards v. Milwaukee Ins. Co.*, 518 N.W.2d 26, 28 (Minn. 1994) (determining that "actual damages" as used in the UIM statute refers to a tortfeasor's liability "exclusive of those damages paid by no-fault coverage").

The no-fault act is intended to (1) relieve uncompensated victims from the economic stress caused by automobile accidents by providing for prompt payment for economic losses to victims of automobile accidents without regard for who was at fault; (2) prevent overcompensation of automobile-accident victims; (3) ensure, by the guarantee of prompt payment, that victims seek and receive appropriate medical treatment; (4) speed the administration of justice, ease the burden of litigation on state courts, and create an efficient arbitration system; and (5) prevent automobile-accident victims from receiving duplicate recovery. Minn.Stat. § 65B.42 (2006); *Scheibel v. Ill. Farmers Ins. Co.*, 615 N.W.2d 34, 37 (Minn.2000). Under the act, Minnesota insurance policies must, at a minimum, provide coverage of $20,000 for medical-expense loss and $20,000 for income loss and other expenses. *See* Minn.Stat. § 65B.44, subd. 1(a)(1), (2) (2006).[2]

■ Ordinarily, an injured party is compensated through his or her no-fault benefits coverage as the expenses and losses are incurred, and unless the tortfeasor is underinsured, the tortfeasor and his or her

2. Do's policy with American Family provided for $30,000 in no-fault medical coverage and $20,000 for disability/income-loss coverage.

liability insurer cover the remainder of the damages. *See Richards,* 518 N.W.2d at 28; *cf. Balderrama v. Milbank Mut. Ins. Co.,* 324 N.W.2d 355, 356 (Minn.1982) (holding that a prior settlement for common-law liability claims does not abrogate the statutory rule that every person suffering loss from injury as a result of a motor-vehicle accident has a right to basic-economic-loss benefits); Minn.Stat. § 65B.46, subd. 1 (2006).

■ Here, Do first sought no-fault benefits from his own insurer but, except for $865.50, the no-fault benefits for his medical expenses were denied. Next, Do settled with the tortfeasor's insurer for $28,000. Finally, Do sued his own insurer under his policy for no-fault and UIM coverage. In that suit, a jury determined that Do's total damages were $49,416.13. This included $39,416.13 in medical-expense damages. Do's policy with American Family allowed for $30,000 medical expenses as a part of no-fault coverage. Although the verdict allocated $10,000 for pain and disability, that $10,000 was not broken down between the two items. If Do had pursued his claims against his own insurer first, American Family would have been liable for the first $30,000 in applicable expenditures as medical no-fault payments and up to $10,000 for disability. The tortfeasor's insurer would have been left to satisfy at most $19,416.13 (the remaining medical plus pain) and possibly as little as $9,416.13 (medical). *See Richards,* 518 N.W.2d at 28 (holding that the tortfeasor's liability is limited to damages that are not compensated for by no-fault benefits); *Balderrama,* 324 N.W.2d at 356 (indicating that a no-fault insurer has a statutory obligation to pay basic-economic-loss benefits).

Because Do's settlement with the tortfeasor's insurer came before the jury's determination of damages and recovery of no-fault benefits, the tortfeasor's insurer paid Do $28,000. This payment of $28,000 and the $30,000 no-fault medical coverage fully satisfy Do's damages as determined by the jury. As a result, Wagner is not "underinsured." Having established that we consider Do's claims against American Family for compensation as no-fault benefits rather than UIM benefits, we proceed with the analysis of the collateral-source rule.

## B. The Collateral–Source Rule

■ In Minnesota, there are two formulations of the collateral-source rule: common-law and statutory. The common-law collateral-source rule states that:

[I]f the plaintiff's special damages ... such as hospital or medical expenses or loss of wages, are paid for by some third person, either as a gift or on the basis of some contractual obligation, this circumstance does not bar the plaintiff from recovering this item from the defendant, even though it may in effect accord to the plaintiff a double benefit or a double recovery.

*Smith v. Am. States Ins. Co.,* 586 N.W.2d 784, 786 (Minn.App.1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999). This acceptance of double recovery recognizes that the injured party, not the tortfeasor, should benefit from gifts or contractual rights. *Id.* This common-law rule applies in cases that are not covered by the current collateral-source statute.

The collateral-source rule set forth in the statute is as follows:

In a civil action, ... when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral

sources. If the motion is filed, ... the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted.

Minn.Stat. § 548.36, subd. 2.

 The statute "prevents double recovery by requiring the deduction of certain benefits received by a civil plaintiff" and thus "abrogates the common law right to be overcompensated for injuries."[3] *Johnson v. Farmers Union Cent. Exch., Inc.,* 414 N.W.2d 425, 432 (Minn.App.1987), *review denied* (Minn. Nov. 24, 1987); *see also* Minn.Stat. § 548.36, subd. 3. The purpose of the collateral-source statute is to prevent "windfalls by plaintiffs at the expense of defendants." *Buck v. Schneider,* 413 N.W.2d 569, 572 (Minn.App.1987). "Collateral sources" to be deducted from jury awards are payments related to the injury and paid to or on behalf of the plaintiff up to the date of the verdict, including payments made pursuant to automobile-accident insurance. Minn.Stat. § 548.36, subd. 1(2); *see, e.g., Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 333–34 (Minn.1990) (considering UIM insurance payments to be a "collateral source" offset against a tortfeasor's liability insur-

ance);[4] *Lee v. Hunt,* 642 N.W.2d 57, 60 (Minn.App.2002) ("No-fault benefits fall within the category of automobile accident insurance, and, therefore, by definition, the collateral source statute applies to the no-fault benefits.").

Here, Do's settlement with the tortfeasor's insurer was a payment made to him pursuant to automobile-accident insurance. Under the plain language of the statute, the prior settlement with the tortfeasor's insurer is a collateral source. The district court simply followed the statute in deducting the amount of that settlement from the jury award.

### C. The Dean Decision

Appellant relies on the *Dean* decision for the proposition that a payment pursuant to a tortfeasor's liability-insurance policy can never constitute a collateral source. 535 N.W.2d at 345. Essentially, *Dean* considered whether to make a deduction for a claimant's personal fault for an accident *before* or *after* an offset was made for insurance proceeds already received from a tortfeasor's insurance company.[5] *Id.* at 343. The court stated:

[U]nder the facts of this case the collateral source rule is clearly inapplicable because a tortfeasor's liability insurance

---

**3.** Typically, the statute is applied in actions against a tortfeasor, but nothing in its language limits its application in this manner. It has been applied in actions against insurers in the past. *E.g., W. Nat'l Mut. Ins. Co. v. Casper,* 549 N.W.2d 914, 916–17 (Minn.1996).

**4.** We note there has been judicial criticism of the statute. "Minn.Stat. § 548.36, subd. 1(2), is poorly written, ambiguous, and could conceivably be read as providing for one, two, three or four different types of collateral source benefits." *Imlay,* 453 N.W.2d at 334.

**5.** The determination is mathematically important in some cases. For example, if a plaintiff

had $100,000 in damages, was 10% at fault, and had been paid $50,000 by a tortfeasor's liability insurance, the amount of his ultimate recovery varies based on how it is calculated. If his 10% deduction for partial fault was offset against his damages *before* the offset for the prior payment for the liability insurance, it would lead to a $10,000 deduction ($100,000 damages × 10% portion at fault). If the partial offset was made *afterwards,* it would result in a $5,000 deduction ($50,000 damages remaining after deduction of tortfeasor's liability payment × 10% portion at fault). There is no claim that Do was partially at fault.

cannot, by definition, constitute a collateral source.

. . . .

... [W]hile it might not be precisely clear exactly what the legislature meant to include as a collateral source, it is patently clear that a tortfeasor's liability insurance can never be within the definition of a collateral source. *The Black's Law Dictionary* definition of "collateral source rule" is helpful: ["]Under this rule, if an injured person receives compensation for his injuries from *a source wholly independent of the tort-feasor*, the payment should not be deducted from the damages which he would otherwise collect from the tortfeasor. In other words, a defendant tortfeasor may not benefit from the fact that the plaintiff has received money from other sources as a result of the defendant's tort, *e.g.* sickness and health insurance.["]

*Id.* at 345.

Appellant urges us to adhere to the broad statement set forth above that a tortfeasor's liability insurance can "never" be a collateral source. Were we to do so, the payment from a tortfeasor's insurance would fall outside the scope of the collateral-source statute, the common-law rule would apply, and double recoveries would be permitted. *See Smith,* 586 N.W.2d at 786 (acknowledging that double recoveries are allowed under the common-law rule). Our careful review of *Dean* and related jurisprudence indicates that such a broad prohibition was not intended.

First, the cases are different. The *Dean* case concerned comparative fault and limits on recovery from the tortfeasor or the underinsured carrier. The *Dean* court acknowledges that it considers the limited issue of whether "an automobile accident liability insurance payment from an underinsured tortfeasor triggers the collateral source rule in a claim for [UIM] benefits when the claimant is partially at fault." *Id.* at 343. The *Dean* court determined that a plaintiff's percentage of relative fault should be deducted before any deduction from a collateral source. *Id.* at 343–45, & nn. 1–2. In our case, we have determined that the tortfeasor's (Wagner's) vehicle was not underinsured, and we do not consider the application of underinsured-motorist benefits. Additionally, there are no claims that Do was partially at fault; and the issue of the sequence to be followed in making various deductions (which was the central issue in *Dean*) is not before us. The *Dean* court did not address the exact question currently before this court.

Second, the statement in *Dean* that a payment made pursuant to a tortfeasor's liability insurance can never be a collateral source is dictum and may be in conflict with the actual holding in the *Dean* case. Despite the *Dean* court's statement that the collateral-source rule did not apply to a tortfeasor's liability payment, it proceeded to deduct the amount of a prior settlement from the tortfeasor's liability insurance ($100,000) from the judgment for UIM benefits, without providing an alternate explanation for doing so. *Id.* at 345.[6] Whatever the rationale, the calculations em-

---

6. The *Dean* court specifies:

| | |
|---|---|
| Aggregate Damages: | $ 353,646.00 |
| Less Dean's Fault (10%): | − $ 35,364.60 |
| Net Damages: | $ 318.281.40 |
| Less Liability Insurance Payment: | − $ 100,000 |
| Uncompensated Damages: | $ 218,281.40 |

*Dean,* 535 N.W.2d at 343. The supreme court ordered the award of $218,281.40 in uncompensated damages in accordance with the calculation above. *Id.* at 345. The $218,281.40 represents the judgment minus damages that have already been recovered through the tortfeasor's liability insurance.

ployed in the *Dean* opinion rejected double recovery and demand that a prior liability settlement with a tortfeasor's insurance offset an ultimate jury award.

Third, the *Dean* court emphasized the importance of preventing double recoveries. *Dean*, 535 N.W.2d at 344 ("[B]oth the collateral source rule and the UIM provisions were meant to avoid double recovery."). This is at variance with the above-quoted *Dean* observations that would, if applied here, result in a double recovery. In our case, a formalistic application of the *Dean* dictum would allow Do to receive $30,000 in no-fault benefits from his insurer and $28,000 from his prior settlement, a total of $58,000, for damages the jury determined to be $49,416.13.

Moreover, on facts more closely aligned to those before us, the Minnesota Supreme Court has determined that a prior settlement with a tortfeasor's liability carrier offsets an arbitration award for UIM benefits. *Casper*, 549 N.W.2d at 916 ("We hold ... that [the UIM insurer] is entitled to reduce the arbitration award by offset of the $50,000 [plaintiff] received pursuant to his settlement agreement with [defendant tortfeasor] and [his] automobile insurer."). *Casper* was decided after *Dean* and makes no reference to *Dean* as precluding the application of the collateral-source statute to a prior insurance settlement.

Do points out that his insurer would have been liable for at least no-fault benefits in the amount of $30,000 of his 39,-416.13 in medical expenses, rather than the $20,550.63 for which it was ultimately liable, if he had not first settled his claims with the tortfeasor's liability carrier. He did not seek recovery in that sequence and that result is not determinative. We recognize that in this case the order and manner in which appellant's damages were paid and the lack of any specific allocation for the settlement with the tortfeasor ben-efited his own carrier by reducing its ultimate no-fault liability. However, the prospect of such reduced liability for the insurer does not entitle appellant to double compensation. Because the statutory collateral-source rule is intended to limit a plaintiff's access to double compensation (*see Johnson*, 414 N.W.2d at 432), we affirm the district court.

Ultimately, our situation is relatively simple. A jury determined that as a result of Do's injuries, he sustained damages in the amount of $49,416.13. He has previously been paid $865.50 by American Family and $28,000 pursuant to a settlement with the tortfeasor's automobile-insurance carrier. The $28,000 settlement is a collateral source as defined in Minn.Stat. § 548.36, subd. 1(2). Do has remaining damages of $20,550.63, which American Family, as his no-fault insurer, is obliged to pay in order to satisfy the judgment. Do is owed no more.

## DECISION

Because appellant's prior settlement with the tortfeasor's liability insurance is a collateral source under Minn.Stat. § 548.36 (2006), the district court did not err in deducting it from the ultimate jury award, and we affirm.

**Affirmed.**