COURT OF APPEALS
DECISION
DATED AND FILED

March 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP115-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF30

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMES J. CANSLER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. The circuit court, on jury verdicts, entered a judgment of conviction against James Cansler for several sexual assault-related crimes against seventeen-year-old A.B. on one night in November 2017.[1]   On appeal, Cansler challenges the court's denial, after a hearing, of his motion for postconviction relief.  Cansler argues that he is entitled to a new trial based on the erroneous admission of testimony by A.B.'s mother, C.D., that she believed her daughter's statements that her daughter was sexually assaulted.  He also argues that his trial counsel rendered constitutionally ineffective assistance by failing to object to testimony:  (1) that Cansler was on parole at the time of the crimes; (2) about the effect of the assaults on A.B.; (3) that Cansler had declined to give a statement to the investigating officers; and (4) about the relative seriousness of A.B.'s injuries.[2]   For the reasons that follow, we reject Cansler's arguments and affirm.

## BACKGROUND

¶2      The State charged Cansler with two counts of second degree sexual assault and one count of sexual intercourse with a child, all as a repeater, based on allegations that Cansler violently assaulted A.B.   A jury trial commenced on May 7, 2019.

---

[1] To protect the identity of the minor victim, we refer to her as "A.B."  *See* WIS. STAT. RULES 809.19(1)(g) and 809.86 (2021-22).  For the same reason, as we indicate elsewhere in this opinion, we refer to her mother as "C.D.," to A.B.'s friend who accompanied her to the hospital the morning after the assaults as "E.F.," and to A.B.'s friend who drove her to Cansler's house the night of the assaults as "G.H."   All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In his reply brief Cansler withdrew a fifth ineffective assistance of counsel claim, concerning counsel's failure to consult with him on whether to request a lesser-included offense. We do not discuss this claim further.

¶3　A.B. testified at the trial as follows. A.B.'s friend G.H. drove her to Cansler's residence on November 5, 2017. During the course of the evening, A.B. told Cansler and the other men present that she was eighteen years old, when she was actually seventeen. A.B. and Cansler engaged in some consensual sexual acts. Cansler then grabbed A.B. by the hair and dragged her into a bathroom where he performed non-consensual sexual acts on A.B. During the non-consensual sexual acts, Cansler tore out tissue from A.B.'s vagina, penetrated her anally and vaginally, and forced his penis into her mouth. A.B. was bleeding and crying, said "oww," asked Cansler to stop, and told Cansler she was going to be sick. A.B. left the house a short time after the assaults and returned to her own home. The next morning, A.B. told her friend E.F. about the assaults and A.B., E.F., and E.F.'s mother all went to the hospital where a Sexual Assault Nurse Examiner examined A.B. and A.B. talked to police.

¶4　Other trial witnesses included A.B.'s mother C.D., her friend E.F., her friend G.H., two investigating officers, and the nurse who examined A.B. at the hospital. We will relate details of these witnesses' testimony as pertinent to our discussion below.

¶5　At the conclusion of the three-day trial, the jury found Cansler guilty of all three counts.

¶6　Cansler filed a motion for postconviction relief seeking a new trial based on two grounds: (1) the erroneous admission of C.D.'s testimony that she believed A.B.'s statements that A.B. had been assaulted by Cansler, on the ground

that the testimony violated the *Haseltine* rule;[3] and (2) ineffective assistance of trial counsel. The circuit court held a *Machner* hearing[4] at which trial counsel and Cansler testified. Counsel testified that the defense strategy at trial was that "this was a buyer's remorse situation," meaning that A.B. told Cansler she liked "rough sex," the sex that followed was consensual, and then A.B. regretted the incident and did not want to admit to anyone that it had been consensual. The court subsequently entered a written decision and order denying the motion.

¶7    Cansler appeals.

## DISCUSSION

### I. Erroneous Admission of Evidence

¶8    Cansler argues that the circuit court erroneously admitted testimony by A.B.'s mother, C.D., that C.D. believed A.B.'s statements to her that A.B. had been sexually assaulted. After briefly stating the applicable law and standard of review, we present additional pertinent background and explain our conclusion rejecting Cansler's argument.

¶9    As noted above, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *State v. Haseltine*, 120 Wis. 2d 92, 96 352 N.W.2d

---

[3] *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984) (stating that the credibility of a witness is for the jury to decide, and that "[n]o witness … should be permitted to give an opinion that another mentally and physically competent witness is telling the truth").

[4] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (when a defendant claims that the defendant received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite … on appeal to preserve the testimony of trial counsel").

673 (Ct. App. 1984). Whether a witness improperly testified as to the credibility of another witness in violation of the **Haseltine** rule presents a legal question that this court reviews independently. **State v. Krueger**, 2008 WI App 162, ¶7, 314 Wis. 2d 605, 752 N.W.2d 114.

*A. Additional Background*

¶10 Before trial, Cansler filed a motion to allow trial counsel "to elicit testimony about the character for truthfulness of [A.B.]" from A.B.'s mother, C.D. The circuit court permitted the testimony about C.D.'s opinion as to her daughter's reputation for truthfulness.

¶11 C.D. testified on direct examination that A.B. came home on the night of the assaults and "[A.B.] came in my room, and she didn't say anything. She just looked at me, and she had a look in her eyes of shock and fear, and I recognized it, because it's happened to me." The circuit court admitted the testimony over trial counsel's objection. C.D. continued, "So after seeing the look on her face and in her eyes especially, I said to her, did a boy hurt you, because I knew. And she said no[.]" C.D. testified that A.B. "was lying when she said no." C.D. testified more generally that, during that time period, A.B. did not confide in C.D. and would lie about her whereabouts and getting high.

¶12 C.D. testified that the next day A.B. called her when C.D. was at work and told her that A.B. was at the Rape Crisis Clinic and had been "raped."

¶13 In response to questioning during cross-examination by Cansler's trial counsel, C.D. testified that, in general, A.B. constantly lied to C.D. about her activities and whereabouts, but that "quite often" C.D. "knew [A.B.] was lying to me," and that "I think I always knew when it was a lie."

5

¶14 On redirect examination, C.D. testified that, when A.B. came home on the night of the assaults, A.B. had a look in her eyes that showed that A.B. was "[s]hocked, scared, hurt. Shocked mostly." The prosecutor then asked, "[Trial counsel] was asking a lot of questions about whether or not you believed at that time that your daughter was a truthful person. Do you think she was truthful about the fact that she was raped?" The circuit court overruled trial counsel's objection, and C.D. continued:

> A. I do think she was truthful because she tried to hide it at first and had to have her friend [E.F.] basically drag her to Rape Crisis .… When [A.B.] told me, I know [A.B.] didn't want to tell me what was going on. It took 20 questions to get the, you know, the what happened out of her. So do I think she was being truthful? Yes, because she tried so hard to hide it from me.
>
> .…
>
> Q. And you said you can always tell when she was lying to you, right?
>
> A. Yes.
>
> Q. So you could have been able to tell if she had lied about this, right?
>
> A. Oh, yes.

## B. Analysis

¶15 Cansler directs his *Haseltine* argument at two portions of C.D.'s testimony: (1) her testimony on direct examination that, when A.B. came home the night of the assaults, C.D. could tell from the look on A.B.'s face and in A.B.'s eyes that A.B. had been sexually assaulted because "it [had] happened to [C.D]"; and (2) her testimony on redirect examination that she thought that A.B. was truthful when A.B. told her the next day that she had been raped and that C.D. would have been able to tell if A.B. was lying at that time, because C.D. could

always tell when A.B. was lying on the many prior occasions when A.B. had lied to her before on other topics.

¶16    We conclude that the circuit court properly admitted the first portion of the challenged testimony as an expression of what C.D. felt and why she had that feeling when she first saw A.B. upon A.B.'s return home the night of the assaults.  This court has concluded that similar testimony by a mother about "her first conversation with" her daughter who had allegedly been sexually assaulted did not violate the *Haseltine* rule.  *State v. Walker*, No. 2018AP186, unpublished slip op. ¶¶21-27 (WI App Nov. 27, 2018).[5]  As in that case, so here, C.D.'s testimony was admissible to express C.D.'s "emotional reaction" when she first saw A.B. upon A.B.'s return home on the night of the assaults.  *Id.*, ¶26.  C.D.'s testimony was about "her shock" and feelings "when she looked at her daughter's face," not about her daughter's truthfulness as a witness.  *Id.*

¶17    As Cansler notes, regardless of C.D.'s emotional reaction based on her own experience, A.B.'s demeanor could have reflected the "shame and embarrassment" that A.B. felt in having willingly participated in "rough sex" with Cansler.  A.B.'s demeanor and how it could have been reasonably interpreted was a legitimate topic for the jury's determination of A.B.'s credibility based on all of the evidence presented at trial.  Her mother's interpretation of what she testified to regarding A.B.'s demeanor, based on the mother's experience, did not usurp the

---

[5] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

jury's role as the "'lie detector in the courtroom.'" ***Haseltine***, 120 Wis. 2d at 96 (citation omitted).[6]

¶18     Turning to the second portion of C.D.'s testimony, we conclude that the circuit court properly admitted this based on the State's argument that Cansler opened the door during cross-examination of C.D.—as to her opinion of A.B.'s character for truthfulness generally, and her truthfulness in specific instances—to redirect examination as to C.D.'s opinion of A.B.'s truthfulness in this instance. Specifically, the State argues that, after Cansler elicited C.D.'s testimony about A.B.'s character for not being truthful, the State was permitted to elicit testimony rehabilitating A.B.'s character for truthfulness under WIS. STAT. § 906.08(1)(b).[7] Cansler does not refute this statutory argument, and, therefore, we may deem Cansler to have conceded the State's argument based on § 906.08(1)(b).  *See* ***United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738

---

[6] We reject the State's implicit invitation to reach a broader conclusion that limits the ***Haseltine*** rule only to testimony by expert witnesses, or only to testimony by one witness as to the truthfulness of another witness's in-court testimony.

[7] WISCONSIN STAT. § 906.08(1) provides:

> the credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to the following limitations:
>
> (a) The evidence may refer only to character for truthfulness or untruthfulness.
>
> (b) Except with respect to an accused who testifies in his or her own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).[8]

¶19 In sum, Cansler fails to show that the circuit court erroneously admitted C.D.'s testimony in violation of the *Haseltine* rule.

## II. Ineffective Assistance of Counsel

¶20 Cansler argues that his trial counsel rendered constitutionally ineffective assistance by failing to object to testimony at four points during the trial. After a brief summary of the applicable legal principles and standard of review, we address each asserted failure in turn.

¶21 The United States Constitution guarantees to criminal defendants the right to effective assistance of counsel. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate that counsel's assistance was ineffective, the defendant must establish both "that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing *Strickland*, 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also Breitzman*, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong [under *Strickland*], we need not consider the other."). The

---

[8] Cansler asserts that the State should have objected to the cross-examination to the extent that it was inappropriate. However, Cansler does not support this conclusory assertion with legal authority and, therefore, we do not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court will generally not consider arguments that not supported by references to legal authority or inadequately briefed).

defendant bears the burden on both of these prongs. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶22 We resolve this appeal based on the lack of a showing on the deficient performance prong. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In other words, professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* A defendant's burden is to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

¶23 "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will not be disturbed unless those findings are clearly erroneous. *Id.* "'The circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (citation omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that

we review independently. *See **State v. Tulley***, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

### A.  *Testimony That Cansler Was on Parole*

¶24    Cansler argues that counsel was constitutionally ineffective by failing to object to testimony that Cansler was on parole at the time of the assaults. The testimony occurred during questioning by the prosecutor and trial counsel of Detective Jason Walters.

¶25    Walters testified about his work as a detective on the case; he helped gather evidence and take statements.  In response to questioning by the prosecutor, Walters testified that he encountered Cansler at a local hospital three days after the assault.  Walters testified that Cansler was at the hospital to report that he was a sexual assault victim and he was requesting an examination.  The prosecutor asked, "And after the examination was done, what did you do?"  Walters testified that, "After he was done my partner, Detective Dosher and I, we arrested him on a parole warrant."  Cansler's trial counsel on cross-examination asked questions directed at how soon Walters arrested Cansler after Walters talked to Cansler at the hospital:

> Q.    Eight minutes later you arrested him?
>
> A.    He was arrested on a parole warrant.
>
> Q.    I understand that, but you arrested him eight minutes after you talked to him, is that correct?
>
> A.    I had been in contact with him since I got to the hospital at like 3:25.
>
> Q.    Well [your report] says 3:25, and then I'm just saying eight minutes later you arrest him, right?
>
> [Walters' recollection is refreshed by reviewing his report.]

11

> Q. All right. So you arrested him eight minutes later, didn't you?
>
> A. Yes.

¶26 During the jury instruction conference, the circuit court offered to give a curative instruction to the jury not to consider any evidence regarding Cansler's parole status. Counsel advised the court that he would not request a curative instruction if the State would not refer to Cansler's parole status in its closing argument. The State advised the court that it would not.

¶27 At the postconviction motion hearing, Cansler's trial counsel testified that he did not object after Walters first mentioned the parole warrant because "[t]he statement came in so fast … if I object to it then, I'm going to cause more focus about it than if I let it roll by" and "I didn't think it was really an important factor that would have some relationship to my client's credibility as to what happened …. I didn't think that that was that important in the overall strategy of my case." Counsel testified that he did not object the second time that Walters mentioned the parole warrant because the testimony showed that Cansler was arrested for a parole violation, not for the sexual assaults involving A.B.; the testimony showed that the arrest had nothing to do with that incident.

¶28 The circuit court found that counsel's chosen strategy was not to object, so as not to draw the jury's attention to the reference to Cansler's parole status, and instead to elicit testimony to mitigate the possible prejudicial effect of the reference on the jury. The court concluded that, while counsel may have pursued other strategies, counsel's chosen strategy "in the heat of the moment at the trial … was reasonable under the circumstances."

¶29    We conclude that counsel employed a consistent strategic decision, from counsel's perspective at the time, to mitigate any prejudicial effect of, and redirect the jury's attention away from, the reference to Cansler's parole status: (1) he did not object to the first, unexpected reference to Cansler's parole status because it did not affect his case strategy and may have called unwarranted additional attention to it had he objected; (2) he followed up by eliciting testimony that focused on the detective's interactions with Cansler at the hospital and the timing of the detective's arrest of Cansler; and (3) he ensured that the State would not re-raise the point in closing argument.

¶30    Cansler argues that "[t]here could be no strategic reason why [trial counsel] would have wanted this evidence presented a trial." However, that is not the question under the law summarized above. Counsel himself testified that testimony about Cansler's parole status was "inadmissible." The question is whether counsel employed a reasonable strategy in response to the unexpected testimony. Cansler does not address this question. Instead, he argues that counsel should have done something different, such as filing a pretrial motion in limine or objecting during trial. However, that counsel had other options does not overcome the strong presumption that the options counsel chose fall within the "wide range" of reasonable professional assistance given thereasons counsel gave for choosing those options. *See Strickland*, 466 U.S. at 689. Accordingly, Cansler fails to show that counsel's performance was deficient. *See Breitzman*, 378 Wis. 2d 431, ¶65 (to show deficient performance, a defendant must "overcome the strong presumption of reasonableness of [] defense counsel's trial strategy by demonstrating that [the strategy] was irrational or based on caprice").

## B. Testimony of Effects of Assaults on A.B.

¶31    Cansler argues that counsel was constitutionally ineffective by failing to object to testimony about the effects of the assaults on A.B.    The testimony was offered by A.B.'s friend E.F., her mother C.D., and another friend G.H.

¶32    E.F., the friend who took A.B. to the hospital the morning after the assaults, testified that before the assaults, she and A.B. were quite close and "more than sisters."  E.F. testified that before the assaults A.B. "was so smart and went to school every day" and after the assaults A.B. "stopped showing up."  E.F. testified that before the assaults A.B. was always happy and since the assaults she no longer seems happy.  Similarly, G.H., the friend who took A.B. to Cansler's house the night of the assaults, testified that the assaults "affected [A.B.] in a bad way, I believe," and that she was no longer "bubbly and fun."  C.D., A.B.'s mother, testified that after the assaults A.B. "went into a downward spiral.  [A.B.] hit rock bottom.  It's been a very dark and painful time."  C.D. testified that A.B. withdrew from family life and "[A.B.] suffers from depression, and she started using drugs, worse drugs, to cope with her PTSD."

¶33    At the postconviction motion hearing, Cansler's trial counsel testified that he did not object to this testimony because it was consistent with his "buyer's remorse" defense that A.B. had engaged in the sexual contact with Cansler voluntarily and then regretted it and was ashamed, and her change in demeanor reflected that regret and shame.  Counsel testified:

> I really thought that she couldn't believe what she did, and felt bad about it … and could not admit that to anyone.  She didn't want to admit to her friends or her mother or anyone else that she was promiscuous with people at a party—with grown men at a party that were a number of years older

14

> than her … that was the reason why she is feeling so bad … that she felt this was a great big mistake, and could not admit it, and that's where depression comes in.

Counsel also testified that he introduced evidence to show that A.B.'s depression after the assaults was a continuation of the depression that she suffered before the assaults and was not due to the assaults.

¶34 The circuit court first concluded that the testimony about the effects of the assaults on A.B. was admissible circumstantial evidence that she was assaulted. Further, the court found that, even if the testimony was arguably objectionable, counsel's strategy was to reframe the evidence about how the sexual assaults affected A.B. as reflecting her regret or remorse for engaging in consensual sexual contact. The court concluded that Cansler failed to meet his burden of showing that that strategy was objectively unreasonable.

¶35 First, we conclude that the testimony about the effects of the assaults on A.B. was admissible because it was relevant and highly probative on the issue of consent. *State v. Lattimore*, No. 2013AP911-CR, unpublished slip op. ¶27, (WI App Sept. 11, 2014) (concluding that evidence of significant changes in the victim's demeanor after a sexual assault was "relevant and highly probative" to the issue of consent particularly when there were no direct witnesses to the issue of consent, and "would undermine the defense theory thatshe merely regretted her decision to have consensual intercourse"). Accordingly, in light of the circuit court's postconviction ruling, counsel committed no error in not objecting to the testimony because the circuit court would have allowed the testimony over counsel's objection. *See State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996) (it is not deficient performance to fail to make an objection that would have been unsuccessful). Moreover, Cansler does not address the

State's arguments relying on this case in his reply brief, which we can take as a concession that the State's arguments are correct. *See United Coop.*, 304 Wis. 2d 750, ¶39.

¶36    Second, even if the testimony were objectionable, we conclude that counsel's strategy, to reframe the testimony to support the defense, was reasonable under the circumstances. Cansler does not directly address the reasonableness of counsel's strategy, but instead focuses on the prejudice of counsel's asserted error. Cansler fails to show that counsel's chosen strategy, as explained in his testimony, falls outside the "wide range" of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Accordingly, Cansler fails to show that counsel's performance was deficient.

*C. Testimony about Cansler's Silence*

¶37    Cansler argues that counsel was constitutionally ineffective by failing to object to testimony about Cansler's exercise of his Fifth Amendment right to remain silent. The testimony at issue was given by Detective Walters and Detective Todd Dosher.[9]

¶38    Walters testified that he spoke to Cansler when Cansler was at the hospital for his own sexual assault examination three days after the assaults involving A.B. Walters testified that "I asked him if he was willing to provide a

---

[9] The parties dispute whether, based on the testimony we now present, Cansler's silence implicated his Fifth Amendment right to remain silent. We follow the State's lead and assume, without deciding, that it did, and that counsel could have successfully objected to the testimony about his silence.

statement where I could investigate his allegations. And he was polite. He respectfully said he didn't want to provide us any information at all."

¶39 Dosher testified that, after several contacts by phone with Cansler, he also spoke to Cansler when Cansler was at the hospital. Dosher testified that "[Cansler] told me that he wasn't going to make a statement, and I explained that I only knew one side of the story and it would be nice to hear his, and he reiterated that he was not going to discuss the case with me." Cansler's trial counsel followed up on cross-examination:

> Q. Now, when you talked to Mr. Cansler this last time he indicated he didn't want to talk to you. He has a constitutional right not to make a statement to you, isn't that correct?
>
> A. Absolutely.
>
> Q. There was nothing wrong with [] what he said, was there?
>
> A. Absolutely not.
>
> Q. And that's not taken [as an] indicia or indication of guilt, is it?
>
> A. No, it's not.

¶40 Before moving on from this summary of trial events, we pause to note that trial counsel would not ordinarily be expecting the prosecutor to ask a question during trial that elicits an answer that directly violates a constitutional right of the defendant. Cansler provides us with no reason to think that trial counsel had a basis to think that this testimony would be sprung on the defense.

¶41 At the postconviction motion hearing, Cansler's trial counsel testified that he should have objected to this testimony that Cansler had invoked his right to remain silent and had no strategy for not objecting. As to counsel's

cross-examination, counsel testified that his questioning was "to put into context what was going on, and why that couldn't be held against him, simply because he didn't want to speak. And the officer had to admit that."

¶42 The circuit court determined that "counsel employed a reasonable trial strategy in how he chose to handle the testimony." When confronted with testimony that counsel had no reason to expect would be offered, that strategy was to address the issue head-on by questioning the detective and putting the testimony in the context of Cansler's right to remain silent and that his silence could not be held against him.

¶43 Cansler focuses in his briefing on the prejudicial nature of this testimony and notes that counsel testified that he should have objected to Dosher's testimony. However, this was an unexpected development and the issue that counsel was suddenly presented with called for a reasonable strategy in response, which counsel followed. That is, we conclude that counsel chose a reasonable strategy in this unusual and unexpected situation, and that Cansler fails to show that counsel's performance was deficient.

### D. Testimony about A.B.'s Injuries

¶44 Cansler argues that counsel was constitutionally ineffective by failing to object to testimony by the nurse who examined A.B. at the hospital about A.B.'s injuries after the assaults.

¶45 The nurse testified that she had "seen" about 300 patients in the course of her work, and that most of them were victims of sexual assault. The nurse testified that A.B. told her about the details of the consensual sexual contact with Cansler, which had turned into violent sexual contact when she no longer

consented to sexual activity. The nurse testified about the injuries that she observed to A.B.'s genital area. The prosecutor asked, "Based on your training an experience of examining 300 patients, are these some of the most extreme injuries that you have seen?" The nurse testified, "It is definitely in the upper number of injuries that I've seen, yes."

¶46 At the postconviction motion hearing, Cansler's trial counsel testified that he did not consider "this question and answer objectionable" because the injuries the nurse observed "showed that she had rough sex that night" and "showed the [e]ffects of" and "fit into [A.B.'s] partying that night with these men." Thus, he had no reason to object.

¶47 The circuit court first concluded that Cansler failed to explain why the testimony regarding the number of injuries the nurse observed was inadmissible. Even if the testimony were inadmissible, the court found that counsel's strategy, to let the testimony stand as consistent with his defense of "buyer's remorse" for consensual "rough sex," was reasonable.

¶48 We conclude that counsel followed a reasonable strategy in letting this testimony stand because it supported his defense. Cansler argues that counsel's explanation "failed to recognize the damaging nature of this evidence" because what happened in the other patients the nurse had examined was irrelevant. However, Cansler's argument disregards the connection between counsel's decision not to object and the theory of the defense. Cansler fails to show that it was unreasonable for counsel to make that connection in this circumstance. Consequently, Cansler fails to show that counsel's performance was deficient.

19

### *E. Cumulative Prejudice*

¶49 Cansler argues that the cumulative effect of counsel's errors entitles him to a new trial. Because we have rejected his arguments of error in each instance based on a lack of proof of deficient performance, there could be no cumulative prejudice.

## CONCLUSION

¶50 For the reasons stated, we conclude that the circuit court properly denied Cansler's motion for postconviction relief. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.